## LISA EVENSON v. ANNA S. AAMODT AND OTHERS.[1]

July 21, 1922.

No. 22,668.

**What constitutes valid transfer of land by verbal gift.**

1. To constitute a valid transfer of land by verbal gift, there must be a gift completely executed by delivery of possession and performance of some acts sufficient to take the case out of the statute of frauds, which performance, to be sufficient, must be an acceptance and taking

[1]Reported in 189 N. W. 584.

of possession under and in reliance on the gift, and the doing of such acts in reliance thereon that it would work a substantial injustice to hold the gift void.

**Findings that verbal gift was not effectual not sustained.**

2. The evidence in this case is sufficient to establish a complete verbal gift of land from father to son, accompanied by delivery of possession and such performance by the donee as to render the verbal gift effectual. Findings to the contrary are not sustained.

Action in the district court for Goodhue county to determine adverse claims to certain real estate. The case was tried before Converse, J., who when plaintiff rested denied defendants' motion to dismiss the action, and at the close of the testimony made findings and dismissed the action. From an order denying her motion for amended findings and conclusions or for a new trial, plaintiff appealed. Reversed.

*Ofstedahl & Rockne* and *T. R. Johnson*, for appellant.

*Mohn & Mohn* and *P. S. Aslakson*, for respondents.

HALLAM, J.

This action was brought to have the court adjudge plaintiff the owner of 80 acres of land by reason of an alleged oral gift to her husband. The court found that there was no gift. From an order denying a motion for a new trial, plaintiff appeals. The question on this appeal is whether the finding of the court is sustained by the evidence.

The evidence is not in conflict. Plaintiff is the widow of Thomas Evenson. Defendant Anna is the sister of Thomas and defendant Evelyn Ruth is the daughter of a deceased brother Joseph. Even T. Evenson was the father of Thomas, Anna and Joseph. He was for many years a well-to-do farmer in Goodhue county. On his farm his family grew up. Thomas remained on the farm and worked there until he was 32 years old and until two years after his marriage to plaintiff. Under just what arrangements he worked during this period does not appear, but he had in fact accumulated nothing for himself. In September, 1914, Even T. Evenson bought 80 acres

of land in the neighborhood, with the undoubted purpose of making a gift of it to Thomas. He took the deed in his own name, but placed Thomas and plaintiff in possession. They moved onto the land and thereafter worked it, improved it and made it their home until the death of Thomas in November, 1917. The improvements made were such as painting the barn, putting on a new roof, putting in cement floor and stone foundation, rearranging the stalls, painting the granary and putting on a new roof, painting and repairing the house, building or repairing other out buildings and fences. In making said improvements and in carrying on the farm, the court found Thomas spent all his time and energy and ability. Even T. co-operated with him, spent a portion of his time in so doing. Thomas, from the income of the farm, boarded the workmen, but Even T. paid the bulk of the bills.

The arrangement by which Even T. placed Thomas and plaintiff in possession was verbal. There was no witness who could give direct testimony as to what the arrangement was except plaintiff, and she was disqualified by interest from giving evidence of the conversations had. The evidence of gift was therefore necessarily circumstantial.

A number of neighbors gave testimony as to declarations of Even T. Evenson. There was testimony that he said to one: "I bought this farm over here for my son Tom;" to another: "I bought this for the boy;" to another: "This is going to be Thomas';" to another: "I bought this place for Thomas," and other statements of similar import.

Thomas died in the fall of 1917. After that Even T. Evenson went to live with plaintiff on the disputed 80. There is evidence that, on one occasion, he said to one who thereafter bought seed grain from the farm and was about to make out a check for the price, "make it out to the widow, that goes to her."

Some evidence was not so favorable. Quam, from whom the land was purchased, said Even T. told him when he was looking at the land he was "buying it for Thomas, his boy," that, when the time came to make the deed, Quam asked if he was going to take the deed in his own name and he said "yes." Quam said: "I thought

you would maybe deed it to your boy." He said: "Well I will do that afterwards, that don't cost much anyhow." To one from whom Even T. and Thomas went to buy a binder, he said: "Thomas is buying this binder." The seller said: "Does he own the farm?" Even T. said: "No, the deed is in my name." One neighbor whom he had told he had bought the place for Thomas, met him after Thomas' death and he then said: "He had bought the place for Thomas, but it was a good thing he had not transferred the deed now the way it had turned out." The neighbor said: "Then that will leave the widow out," and he said: "Oh no, if she stays with me she will have the place."

It would appear that during the lifetime of Even T. and both before and after the death of Thomas, there was the best of good feeling in the Evenson family. Even T. was a generous father. His conduct toward Thomas and plaintiff from time to time was prompted by considerations of love and affection quite as much as by any ordinary business principles.

The court found: "That it was the intention and purpose of Even Evenson, in purchasing said land, to provide a farm and a home for his said son, Thomas, and his family, and it was so understood by all the members of the family; and it was in pursuance of that plan and purpose that Thomas and Lisa moved onto the farm in March, 1915, and thereafter made it their home," but found that there was no substantial evidence of a completed gift.

The law of the case is well settled. To constitute a valid transfer of land by verbal gift, there must be a gift completely executed by delivery of possession and performance of some acts sufficient to take the case out of the statute of frauds. The performance necessary for this purpose must be an acceptance, a taking of possession under and in reliance upon the gift and the doing of such acts in reliance thereon that it would work a substantial injustice to hold the gift void. Lindell v. Lindell, 135 Minn. 368, 160 N. W. 1031. See also Drager v. Seegert, 138 Minn. 6, 163 N. W. 756; Snow v. Snow, 98 Minn. 348, 108 N. W. 295; Hayes v. Hayes, 126 Minn. 389, 148 N. W. 125.

2. In this case there was delivery of possession. The performance was sufficient under the rule of the cases cited. The evidence was sufficient to establish a complete gift. We are of the opinion that, the whole testimony taken together, the finding to the contrary is not sustained.

Order reversed.

DIBELL, J. (dissenting.)

I dissent from the holding that the evidence does not sustain the refusal of the court to find a parol gift of the land.

Though evidentiary facts are not in dispute the ultimate inference drawn from them, when reasonable minds may differ, is of fact and not of law. Great Northern Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N. W. 135, and cases cited; Krause v. Union Match Co. 142 Minn. 24, 170 N. W. 848; State ex rel. Miessen v. District Court of Ramsey County, 142 Minn. 335, 172 N. W. 133. The burden of proof was upon the plaintiff. Coming here with an adverse finding it must appear, before the plaintiff can prevail, that the evidence does not sustain it. The minimum test of the sufficiency of evidence is whether it is manifestly or palpably opposed to the finding. On appeal the question whether a finding is sustained is of course one of law, for otherwise there could be no review of the sufficiency of evidence.

From so careful a consideration as I am able to give the evidence the refusal of the trial court to find a gift seems sustained. Its finding satisfies a higher than the minimum test. If I were to make a finding from the printed record, without the advantages that the trial court had for making correct deductions, I might come to the same conclusion, though conceding that a different one might be reached. The trial court, exercising a careful judgment and keeping a safe conscience, might find as it did. The result reached in this court is happier than that made necessary by the finding which the trial court felt compelled to make, for it is not to be doubted that had the father and son lived and things gone well the contemplated gift would have been made, or, if the father had lived some longer it is not unlikely that he would have given the property to his

daughter-in-law as he once indicated was a likely result. But it seems to me that the result now declared is reached by finding the facts from the evidence instead of determining as an appellate court the legal sufficiency of the evidence to sustain the findings of the trial court.