## WARD et al. v. JONES et al.    (No. 9684.)

Court of Civil Appeals of Texas. Dallas. Jan. 15, 1927.

**1. Gifts ⊙—1—"Gift inter vivos" is gratuitous and absolute transfer between living persons whereby all right and title immediately passes.**

A "gift inter vivos" is an absolute transfer of property from one living person to another living person, without any consideration or compensation, whereby all right and title to the subject-matter of the gift is immediately renounced by the donor and immediately acquired by the donee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gift Inter Vivos.]

**2. Gifts ⊙—11—Where check was given and used to buy home with intention to vest title immediately, gift became absolute when check was cashed, and title to home vested in donees, though taken in donor's name.**

Where grandfather gave check to grandson for home for the grandson and his wife and child, with intention to immediately vest in the donees the title to the money represented by the check, and money was used for home for donees, and the property occupied by the donees as their home, gift became absolute from time check was cashed, and title to home vested in donees, though taken in name of donor.

**3. Gifts ⊙—50—Question of gift is for jury, where donor is living, if there reasonably appears room for substantial difference of opinion among reasonable men.**

Where alleged donor is living, and there is no question of incapacity, rights of creditors, and undue influence, and the sole question is the naked one of the gift, whether or not there was a gift is a question for the jury, if it reasonably appears to the trial court that there is room for substantial difference of opinion among intelligent, upright, and reasonable men.

**4. Gifts ⊙—50—In action to determine title, whether money was unconditional gift for home for grandson, his wife, and child, held for jury.**

In action to determine title to real property, question whether money represented by check of grandfather was unconditional gift to be used for the purpose of acquiring a home for

---

⊙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

grandson, his wife, and his child, *held* a question for the jury.

**5. Gifts ⬅═49(5)—In action to determine title, evidence held to sustain finding that money was unconditional gift for home for grandson, his wife, and child.**

In action to determine title to real property, evidence *held* to sustain jury's finding on special issue that, when check of $5,000 was delivered by grandfather to grandson, the money represented was an unconditional gift for the purpose of grandson acquiring home for himself, his wife, and his child.

**6. New trial ⬅═44(3)—That jury discussed effect of answer to special issue held not ground for new trial (Rev. St. 1925, art. 2234).**

In action to determine title to real property, that jury discussed what would be the legal effect of affirmative answer to special issue which they subsequently rendered to the effect that money represented by check was unconditional gift for home for grandson, his wife, and his child, *held* not ground for new trial, under Rev. St. 1925, art. 2234.

**7. New trial ⬅═143(1)—Discharged jurors may impeach verdict only on matters clearly within statute (Rev. St. 1925, art. 2234).**

After verdict has been received, and the jury have been discharged and have mingled with outsiders, jurors may impeach the verdict only on matters clearly within the terms of Rev. St. 1925, art. 2234.

**8. Gifts ⬅═42—Where gift is to three persons, presumably they share equally.**

Where a gift is made to three persons, the inference of the law is that they share equally in the gift.

**9. Trespass to try title ⬅═34—In suit to determine title, disclaimer of defendant could not vest his title in another, but could no more than prevent affirmative decree for him.**

In suit to determine title to real property brought by two of three owners against third owner and another, disclaimer by such third owner could not vest title to his interest in any of the other parties to the suit, but could no more than prevent the decree from affirmatively vesting title to any portion of property in him.

**10. Husband and wife ⬅═49½(3)—That husband stated property would be wife's and child's if he gave ground for divorce, and wife secured divorce for cruelty, held not to effect gift.**

Gift *held* not effected because husband stated that, if he did not treat his wife right and gave her ground for divorce, then the property would be one-half hers and one-half child's and thereafter wife secured divorce on the ground of cruel treatment.

**11. Husband and wife ⬅═39—Wife's return held not consideration for husband's promise that, if he gave ground for divorce, property would be hers and child's.**

Where husband and wife were separated, and grandfather gave sum for purpose of acquiring a home for the grandson, his wife, and his child, and wife returned to the husband, such return *held* not a consideration for husband's promise that, if he did not treat his wife right and gave her ground for divorce, the home should be one-half hers and one-half child's.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Suit by Jennie V. Jones and another against W. S. Ward and another. From a decree in favor of plaintiffs, defendants appeal. Reformed, and, as reformed, affirmed.

Harrell & Starnes, of Greenville, for appellants.

W. B. Hamilton, of Dallas, and L. Dillard Estes, of Commerce, for appellees.

JONES, C. J. Appellees Jennie V. Jones and Mona Louise Jones, minor daughter, in a suit instituted for such purpose in the district court of Hunt county, were decreed title to a house and lot in the city of Greenville, Hunt county, Tex., and appellants W. S. Ward and Marvin S. Jones, defendants in said suit, were divested of all title to such lot. W. S. Ward was the holder of the legal title to the land, as shown by a duly recorded deed of conveyance to him from L. N. Byrd. The appellees, by their second amended original petition, alleged, first, a cause of action in form of trespass to try title; and, second, that they were the equitable owners of the land by virtue of a parol gift of $5,000 to appellees and appellant Jones by Ward, for the purpose of using the money to buy a lot and erect a house thereon for their home; that they accepted the gift and fulfilled its purpose by use of the money for the immediate purchase of a lot, the erection of a house, and its occupancy by them as their home; that the deed to the lot was taken in the name of W. S. Ward, not as owner of the fee, but in trust for their use and benefit. The basis for the judgment is the following finding of fact by the jury in response to the special issue submitted by the court:

"When the check for $5,000 was delivered by W. S. Ward to Marvin Jones, the money represented by said check was an unconditional gift by W. S. Ward for the purpose of acquiring a home by Marvin Jones for himself, wife, and child."

The controlling question on this appeal is whether this finding of the jury is supported by substantial evidence. While appellants challenge the sufficiency of the petition to authorize a recovery upon this finding, we are of the opinion that such assignment is not well taken. The issue of the sufficiency of evidence is raised by assignments of error on the refusal of the court to give requested peremptory instruction in favor of appellant, and by assignments of error challenging the sufficiency of the evidence to support the finding.

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The undisputed evidence shows that Jennie V. Jones and Marvin S. Jones were married in the year 1910 and were husband and wife for about 14 years, when a divorce was granted to the wife on ground of cruel treatment; than Mona Louise Jones was the daughter of this marriage and at the time of the trial of this case was 11 years of age; that in April, 1918, a separation occurred between these parties because of the cruel treatment of the husband toward the wife; that in April, 1921, a reconciliation took place and they lived together as husband and wife until October, 1921, when another separation occurred, the husband leaving the wife. The husband is the grandson of appellant Ward and on the occasion of the last separation they were living in the home of Ward in Hunt county. When this latter separation occurred the wife with the daughter lived with a sister in Commerce, Tex., until November of the same year, when she and her husband again became reconciled and lived together as husband and wife until the final separation in 1924. On December 16, 1924, the divorce was secured on the suit of the wife on the ground of cruel treatment. At the time the divorce was granted, appellees were living in the premises that are under dispute in this case.

The undisputed evidence further shows that the lot purchased was selected by Marvin Jones and his wife, and the deed of conveyance taken in the name of Ward; that the house was at once erected on the lot with the remainder of the proceeds of a check delivered to Marvin Jones by Ward; and that the family, consisting of Marvin Jones, his wife, Jennie V. Jones, and daughter, Mona Louise, moved into same, where they remained as a family until, in 1924, when the last separation took place. As this is all the undisputed evidence material to the case, it follows that as to the vital issues of this case the evidence is contradictory.

The issue raised by these assignments is determined by whether or not, first, Is the evidence in favor of appellees sufficient to make out a prima facie case of a gift inter vivos of the money represented by the check, to appellees and Marvin Jones? And, second, If such a case is made out under the rules of law applicable to such gift, does the evidence in favor of appellants, as a matter of law, destroy such prima facie case? These questions will be discussed in the order they are stated above.

[1, 2] A gift inter vivos is a gift from one living person to another living person. A gift has been judicially defined as a voluntary transfer of property by one to another, without any consideration or compensation therefor. Its distinguishing elements are that it must be voluntary, gratuitous, and absolute. The donor must renounce immediately all right and title to the subject-matter of the gift and the donee must acquire immediately all right and title thereto. 12 R. C. L. 923; 28

Corpus Juris, 620. Applying this definition to the case under review, if the check of Ward to Marvin Jones was delivered by the former to the latter with the intention that the money it represented should be transferred from Ward to Jones, for the purpose of immediately vesting the title to such money in himself and appellees, to be used for the purpose of purchasing a lot and erecting a house as their home, and the check was cashed and at once used for such purpose, and the property thus acquired occupied by them as their home, then the gift became absolute from the time the check was converted into money and the title to the property thus purchased vested in appellees and Marvin Jones at the time it was purchased, notwithstanding the deed to same was taken in the name of Ward; for, as between the parties, Ward's holding of the legal title was solely for their benefit. The effect of the finding of the jury is that this was the transaction under inquiry.

[3] It is frequently laid down as a rule that gifts inter vivos are watched with caution by the courts and that to sustain them the evidence must be "clear and convincing." Baker v. Bledsoe (Tex. Civ. App.) 182 S. W. 1184. The reason for the frequent adoption of such a rule is well stated in the text in 28 Corpus Juris, 676. It is:

"In order that the rights of creditors may not be prejudiced, that the donor may not be circumvented by fraud, that he may be protected from undue influence, which would result in an unequal and unjust distribution of his estate, and that efficacy may not be given to gifts made under legal incapacity."

The meaning given, and the significance attached to the phrase "clear and convincing" depends upon the circumstances surrounding each alleged gift. If the alleged donor be living, and if there be no question of incapacity, of the rights of creditors, of undue influence, and if the sole question is the naked one of a gift vel non, then we think that in such a case, if it reasonably appears to the trial court, from a consideration of the evidence as a whole, there is room for substantial difference of opinion among intelligent, upright, and reasonable men, on the question of a gift, such question is for the determination of the jury. Gilkey v. Peeler, 22 Tex. 663; Merchant v. Rogan (Tex. Civ. App.) 150 S. W. 956; 28 Corpus Juris, 683.

[4, 5] Does the instant case come within this rule? Let us examine the evidence and see. As testified to by Mrs. Jones, a very few days after the check was delivered to Marvin Jones, an interview occurred between her and Mr. Ward, in which he told her that—

"He was giving us the home and he wanted us to live together and be happy, and he wanted me to come back to Marvin and live with him, and he said if Marvin did not treat me right, if he drank and gambled like he had been doing, the home belonged to me and the baby."

This conversation of Ward's could only have referred to the gift of the money represented by the check and the purpose for which it was to be used, as this was the subject-matter of whatever gift he had made. As significant of the understanding of one of the parties at the time, Mrs. Jones testified:

That while she was in Commerce she received a letter from her husband in which he stated that "his grandfather was going to give us a home, and, if I would come back and take this money his grandfather was going to give him and buy a home for the baby, himself, and me, and if he did not live up to his marriage vows, if I came back to him and he mistreated me and I could not live with him, then the home would be mine and the baby's home;" that on the same day he called her up over the telephone and made the same statement; that she accepted his proposition, came to Greenville on the next day, and went to the house of his mother in that city, where he showed her a check, and said, "This is the money for our home, your home and mine and the baby's, and you will have a home for life;" that he then handed her the check, and said, "I am giving this to you to fulfill my obligation, the promise I made to you in writing;" that she had the check in her hands and saw that it was a check, without any conditions attached, made out to Marvin Jones for $5,000, and signed by W. S. Ward. "I told him to take the check and put it in a home for us."

She further testified:

That her husband told her on this occasion "that, if he was not good to me, then the home would belong to me and the baby, if he gave me grounds for divorce; that it was the property of me and the baby, one-half of it was mine, and one-half was the baby's, if he did not treat me right."

Again she testified:

"Mr. Ward gave me a reason for wanting us to have that home out there; he said he wanted us to have it as a home for Mona Louise and myself, and he wanted Marvin and I to go back together and live together and be happy; he said he did not want the baby to be pulled about from place to place; he said he wanted us to have that as a permanent home."

Mr. Ward, on cross-examination, testified:

"My purpose in taking the deed to the property in my name was to keep Marvin from squandering it; that is the idea, to keep him from incumbering it; and I did the same with my other children; I did it to keep him from squandering it; that is what I did in this case; I had the deed made in my name to keep him from squandering it, the same as I did the others."

The lot was selected by Marvin Jones and his wife without any advice or assistance from Mr. Ward, and the house was built without any advice or consultation with him in reference to plans or manner of construction. However, an itemized statement of the cost of the house was furnished Mr. Ward at his request. The house and lot cost approximately the sum of $5,000. The check was cashed immediately after Mrs. Jones came to Greenville, and $195 placed to the credit of Mrs. Jones, and all of the remainder placed to the credit of Marvin Jones' sister. The checks in payment of material and workmen in the construction of the house were drawn by Mrs. Jones, but signed by Marvin Jones, by signing his sister's name by himself. Mona Louise Jones had always been a helpless cripple.

The effect of this testimony unmistakably shows a gift by W. S. Ward of $5,000 for the purpose of acquiring a home for the family. Either just before or just after the check transaction, Marvin Jones wrote a letter to his wife which carried with it the same purpose of the gift; that Ward expressed to Mrs. Jones:

"Grandfather is going to give us a home. The money he is giving will be used to buy a home for the baby, myself, and you."

To whom was it given? The testimony shows that the money was for them all, not for Marvin alone, not for Marvin and his wife, but for the three of them. It is true the deed was taken in the name of Mr. Ward. He gives an explanation of this not inconsistent with the gift. It was for the purpose of preventing it being squandered and the purpose of the gift thereby circumvented. We therefore hold that a prima facie case of gift was made out by appellees.

Was the evidence offered by appellants so certain and convincing that, as a matter of law, this prima facie case was destroyed? At the time the check was given, there was present Mr. Ward, Marvin Jones, and Dr. Prather. They all testified to the fact that the money represented by the check was given for the specific purpose of the purchase of a lot and a building thereon to be used by Marvin Jones for a home for himself and his family, so long as he and his wife should live together, without the payment of any rent; and with the payment only of the taxes and insurance, but that the title to the property was to be in Ward and the deed was to be taken in his name; in other words, they gave testimony to the effect that Mr. Ward was to furnish the money to purchase a lot and build a house to be used by Marvin Jones as a home, free from rent, as long as he and his wife remained together, but that the money so furnished was to be Ward's money and the title to the home to be thus secured was to be in Ward. This is in direct contradiction to the statement made by Ward, as testified to by Mrs. Jones, and in direct contradiction of the statement made by Marvin Jones to Mrs. Jones. The said statement of Ward to Mrs. Jones is that a gift was made. The testimony in behalf of appellants, as above stated, is that no gift of the money was made. However, the reason given by Mr. Ward for taking the deed in his name is more consistent with the

theory that a gift was made, and therefore must be taken as corroborative of Mrs. Jones' testimony. Likewise the statement of Marvin Jones to his wife, about the time of the check transaction, is consistent with appellee's theory and inconsistent with appellant's, and, as Marvin Jones was one of the parties to the check transaction, is somewhat corroborative of Mrs. Jones' testimony. The testimony of the attorney for Mrs. Jones in the divorce suit, that she told him that the property was Mr. Ward's, is inconsistent with her testimony in this case, though she denied this statement and filed this suit the next day after the divorce was granted. This demonstrates the fact that the record presents a case in which there is positive testimony contradicting positive testimony, and each corroborated by circumstances and other evidence. The declaration of Mr. Ward, the donor, closely following in point of time the alleged gift, is affirmative testimony in favor of appellees on the issue involved.

What is the truth in this controversy? Certainly it could not be said that intelligent, upright, and reasonable men would necessarily entertain the same opinion as to what the truth is. Under any rule of law, this evidence made an issue of fact to be determined by a jury. We therefore are of the opinion that the rebutting evidence of appellants did not, as a matter of law, destroy the prima facie case made by appellees. It necessarily follows that there was no error in refusing the request for peremptory instructions in favor of appellants, and all assignments of error in reference to this issue are overruled.

[6] There is an assignment of error in reference to misconduct of the jury, in that the jury discussed for some time the effect of an affirmative answer to the said special issue, and it would appear from the evidence offered that the jury finally concluded that its effect would only be to give to Mrs. Jones and her daughter a home for life, and not to divest Ward of title to the property. This fact is testified to by two jurors, the only ones who gave testimony on the motion for a new trial. The character of misconduct of a jury that will allow its members to impeach their verdict by their testimony is given by article 2234 of our Revised Statutes (1925) and is as follows:

"Where the ground of the motion [for new trial] is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the courts shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material."

[7] The ground of misconduct here alleged is not embraced in any of the provisions of the above article. The evidence of the jurors only amounted to an expression of the meaning and the effect of an answer to the special issue submitted, and argument between themselves incident to such question. This was a matter they should not have discussed, for they should have been concerned only in finding the facts on the disputed issues submitted to them, leaving the effect of their finding to the court. Because the members of the jury overstepped their duty in this respect, did this give grounds for a new trial? We think not. Suppose that each juror had believed at the time he agreed to the verdict that the effect of their answer would be as the two jurors testified the jury supposed it to be, and had gone into court and offered to testify to such belief at the time; could such testimony be received and a verdict be impeached by reason thereof? No one would make such contention. We fail to see any substantial difference between the case stated and one in which the jurors not only believed an erroneous fact in reference to the effect of their finding, but also expressed that belief in the presence of each other. We think that, after a verdict of the jury has been received, and the jury discharged and permitted to mingle with outsiders and are free to discuss the result of their verdict, they should only be allowed to impeach the same on matters clearly within the terms of this statute. This assignment of error is overruled.

[8-11] The verdict of the jury is that the gift of this money was for the purpose of buying a home for Marvin Jones, Jennie V. Jones, and their daughter, Mona Louise. The testimony upon which this finding is based is susceptible only to the meaning that it was a gift to the three persons, and the inference of law is that each shared equally in this gift. In other words, adopting the finding of the jury as a fact, the lot purchased and the house erected thereon was owned one-third by Marvin Jones, one-third by Jennie V. Jones, and one-third by Mona Louise Jones. The judgment entered on this verdict decreed the property in the wife and child and divested Marvin Jones of any right thereto. It is true that Marvin Jones filed a disclaimer, but the effect of this is not to vest any share that he might really have owned in any of the parties to the lawsuit. At most, its effect in this respect could be no more than to prevent a decree affirmatively vesting title to any portion of same in him. It is argued that because he made the statement to the effect that, if he did not treat his wife right and gave her ground for a divorce, then the property would be one-half hers and one-half the child's, gave them title to his share, because of the decree of divorce on the ground of cruel treatment, but this language does not make a gift, nor is it founded on a contract between the parties. At most, it can only be considered as a promise to transfer his interests in the home equally between his wife and child, and it does not appear that this promise was ever executed, though the conditions under which it was to have been executed

arose. We cannot agree with counsel for appellees that the acceptance by Jennie V. Jones of the condition under which they were to have the gift constituted a consideration for this promise and made of it a contract between the parties. Whatever consideration there was on her part was fulfilled when the house was built and they moved into it as a home, and she cannot complain because she accepted a promise of a gift rather than insisting on·an execution of the gift.

We must hold that the judgment is erroneous, in so far as it gives title to appellees in the·entire property, and reform the judgment to the extent of vesting appellees with title to an undivided two-thirds of the property. It is the opinion of the court that as thus reformed this judgment should be affirmed.

Reformed and affirmed.