## MINNEAPOLIS ELECTRIC LAMP COMPANY AND OTHERS v. FEDERAL HOLDING COMPANY AND ANOTHER.[1]

October 26, 1928.

No. 26,771.

**Notice of termination of lease waived by landlord and tenant.**
1. The evidence is *held* to show a waiver by both parties of a provision in a lease for a stated term ·requiring written notice to prevent the automatic extension of the lease for another term.

**Such requirement may be waived by words and conduct of landlord.**
2. Such a provision may be waived by the lessor by words and conduct leading the lessee reasonably to believe that no further notice or action on his part is required to terminate the lease at the end of the stated term, when the lessee, relying thereon, and with the permission of the lessor, then leases and removes to other premises, and will suffer substantial loss if thereafter held to the strict terms of the lease as to giving such notice.

Landlord and Tenant, 35 C. J. § 154 p. 1022 n. 80.

Plaintiffs appealed from an order of the district court for Hennepin county, Nordbye, J. denying their motion for a new trial. Reversed.

*Ohman, Fryberger & Wangaard,* for appellants.
*Jamison, Stinchfield & Mackall,* for respondents.

OLSEN, C.
Appeal by plaintiffs from an order denying their motion for a new trial.

While there are additional parties, the Minneapolis Electric Lamp Company will be hereinafter referred to as plaintiff and the Federal Holding Company as defendant.

Plaintiff brought this action to have the lease between plaintiff and defendant, hereinafter more particularly described, decreed terminated as of December 31, 1922, and to enjoin defendant from

[1]Reported in 221 N. W. 645.

prosecuting an action at law in the municipal court to collect rent alleged due under said lease subsequent to the claimed termination thereof. Defendant denied that the lease had been terminated or should be so decreed, and presented a counterclaim for rent claimed owing under the lease after December 31, 1922. The court found for defendant and ordered judgment for recovery of the rent claimed.

The lease was entered into between the parties on or about December 10, 1920, for a term commencing January 1, 1921, and ending December 31, 1922. It contains the provision, printed therein, that in case neither party gives the other party written notice at least 30 days prior to the expiration of the term of the lease of intention to cancel or surrender the same it shall be taken and deemed to have been continued for another year from the date of its expiration as fully as if said parties had executed a new lease therefor upon the same terms, and so on for consecutive terms of one year until canceled by 30 days' written notice before the end of the term so created.

The lease contains the usual provision that the lessee shall not assign the lease or sublet the premises or any part thereof without the written consent of the lessor. The premises, situated in the business district of Minneapolis, were leased for business purposes, for office, sales and store room for the handling of electric lamps. The same premises had been leased to and occupied by plaintiff for some time under prior leases between the parties.

The plaintiff occupied the premises under the lease in question from January 1, 1921, until about October 1, 1921. In the summer of 1921 the plaintiff's business had grown to such an extent that the leased premises were insufficient and inadequate for its proper conduct, and it became necessary for plaintiff to obtain larger quarters. Defendant was so informed but could not provide larger quarters in its building. Plaintiff was offered suitable quarters in the same business district with many times larger floor space in a building owned by the Lando F. Gran Company. The rent paid by plaintiff under its lease with defendant was $175 a month, less ten per cent discount if paid before the tenth of each month.

The rent required to be paid for the larger quarters was $350 a month for the first two years and $375 a month for the next three years. Plaintiff's business required the larger quarters, and it desired to remove thereto provided it could be released from its obligations under its lease with defendant. Negotiations were then had with defendant in the latter part of September, 1921, for that purpose. Defendant's president, H. W. White, conducted the negotiations on its behalf. His authority is not questioned. Mr. Lesher, its president, and Mr. Wheaton, its secretary, acted for the plaintiff. Defendant was informed of plaintiff's needs and of it plans and negotiations for larger quarters, and that before it could rent other quarters it was necessary that it be released or relieved in some way from its obligations on its lease with defendant. Plaintiff offered to then move out of defendant's premises and pay three months' rent in advance, up to January 1, 1922, if defendant would release it from further obligations under the lease. Mr. White examined the lease and stated that it had 15 months to run and that he did not care to release plaintiff upon payment of the three months' rent. The question of subletting was then taken up, and Mr. White said he would consent thereto for the unexpired term if a suitable tenant was presented; that they would not in any way interfere with plaintiff's plans so long as it found a suitable tenant satisfactory to defendant and subject to its consent. On the next day Mr. White wrote a letter to plaintiff confirming the conversation had. In that letter he states:

"Confirming the recent conversation * * * regarding your lease * * * which lease expires on January 1, 1923, would say that without waiving any of the other conditions of the lease, we will consent to a subletting by you * * * with the understanding that any such sub-tenant shall be subject to our approval."

The plaintiff's officers understood that this arrangement released them from all further liability on their lease with defendant, upon their subletting the premises to tenants consented to by defendant and seeing to it that the rent was paid up to the end of the 15 months, and understood and relied upon the statement that the

lease expired on January 1, 1923. With that understanding they leased the new quarters for five years, for the rent as stated, upon agreement by the Gran company to credit plaintiff with the difference, if any, between the rents received from subtenants of defendant's premises during the 15 months and the rent coming to defendant therefor during that period. Plaintiff, on October 1 or within a few days, vacated defendant's premises and moved into the new quarters. The keys were returned to defendant and were accepted. Plaintiff thereafter sublet the premises for part of the time, with provision that the sublease should expire on December 31, 1922, and defendant consented thereto. Plaintiff received the rent from the subtenants and paid the rent to defendant up to December 31, 1922, the end of the term stated in the lease. The principal sublease was for a period of 11 months, from February 1, 1922, to December 31, 1922. In indorsing its consent on the sublease, defendant appended the statement: "This permission, however, is not to interfere with any of the covenants of said Minneapolis Electric Lamp Company's lease with the Federal Holding Company." This indorsement however was not made until January 28, 1922. The subtenants vacated the premises on December 31, 1922. No written notice was given by either party to terminate the lease between plaintiff and defendant 30 days prior to December 31, 1922. Plaintiff had no information that defendant intended to require such notice until about December 15, 1922, when too late to give it. There is some testimony by one witness, denied by Mr. Lesher, that in a conversation between them in March, 1922, Mr. Lesher made some statement or request about desiring then to obtain a release from obligations to defendant. Mr. Price's recollection of the conversation is uncertain, and it does not appear that notice to terminate the lease was referred to.

The decisive issue in the case is whether or not the defendant waived written notice to terminate the lease on December 31, 1922. The court found there was no waiver or estoppel. The question for review is whether those findings are sustained by sufficient evidence.

Waiver is generally a question of fact. It becomes a question of law, when the facts and circumstances relating to the subject are admitted or clearly established. Swedish Am. Nat. Bank v. Koebernick, 136 Wis. 473, 117 N. W. 1020, 128 A. S. R. 1090. Where there is dispute as to the facts, or where different inferences may reasonably be drawn from undisputed facts, this court does not disturb findings of fact made by the trial court. But if the evidence taken as a whole is manifestly and palpably contrary to the findings, it is an abuse of discretion not to grant a new trial even if there be some items of evidence tending to sustain the findings. Voge v. Penney, 74 Minn. 525, 77 N. W. 422; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; Bartroot v. St. Paul City Ry. Co. 125 Minn. 308, 146 N. W. 1107; Evenson v. Aamodt, 153 Minn. 14, 189 N. W. 584; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678.

It is elementary law that written notice required to be given by the terms of a lease, insurance policy, or other contract may be waived by one or both of the parties thereto. The purpose of the notice required by the lease in question was to inform the party to whom given that the lease would not continue beyond the end of the second year so that such party would then, in case of the lessee, have 30 days' time to obtain other quarters and, in case of the lessor, have the same time to secure other tenants or make other disposition of the premises. Here the lessor was given ample oral notice, 15 months before the end of the term, that the lessee intended to vacate and surrender the premises, terminate the lease and not continue it beyond the term. It is suggested in the argument that this notice was not binding on the lessee and that the lessee could nevertheless have asserted and maintained a right to continue the lease. That claim is not well founded. By vacating the premises and informing the lessor that it did not intend further to use them, surrendering the keys, moving out and asking to be released, it fully waived any further notice by the lessor and estopped itself from ever claiming any continuance of the lease. Defendant was thereupon free to lease or dispose of the premises as it saw fit for the

term commencing January 1, 1923. Had the lessor, any time after October 1, 1921, leased or disposed of the premises to others for a term commencing January 1, 1923, no court could have held that plaintiff had any right to interfere therewith. So far as the lessor was concerned, the effect was that it had 15 months' instead of 30 days' notice.

But verbal notice, standing alone, would not bind the defendant. It had the right to insist on written notice, but it might waive such notice. That it did waive written notice seems quite clear. It was fully informed as to plaintiff's desire to vacate the premises and terminate the lease, not only at the end of the stated term but prior thereto as of October 1, 1921. It was informed as to plaintiff's need of larger quarters and that it had opportunity to and would lease such other quarters if it could be relieved of its obligations to defendant on the lease. In that situation defendant consented to and permitted plaintiff to remove from the premises, received and retained the keys, and consented to subleases up to the end of the term stated in the lease. It did more than that. Its president stated, in the negotiations and in the letter confirming them, that the lease had 15 months to run and expired January 1, 1923. With full knowledge of plaintiff's plan and purpose to terminate the tenancy and be relieved therefrom, defendant's president stated to plaintiff, as testified by him, that "we [defendant] wouldn't in any way interfere with their plans so long as they found a tenant whose business was suitable to the building and a tenant satisfactory to us." The tenant was found and approved by defendant. That would seem to end the matter and waive any further notice. In effect the defendant by that statement consented to plaintiff's release from the obligations of its lease except that it undertook to obtain suitable subtenants and see that the rent was paid up to December 31, 1922. It is true that in the letter confirming the conversation Mr. White states that "without waiving any of the other conditions of the lease, we will consent to a subletting by you * * * with the understanding that any such sub-tenant shall be subject to our approval;" but in that letter he

also stated that the lease "expires on January 1, 1923." It is reasonable to infer that "the other conditions of the lease" has reference to the many conditions in reference to the use and care of the building and payments of rent up to January 1, 1923, and not to the condition as to written notice.

Again, the letter clearly indicates that something had been waived. "Without waiving any of the other conditions" concedes that something had been waived. What was it? The lease did not prohibit subletting. It only prohibited such subletting without the consent of the lessor. A consent to subletting which had to be consented to by the lessor waived nothing in this lease. It left the tenant in the same position as before. The lessee had the same right to sublet, with the consent of the lessor, before these negotiations took place as it had thereafter. The reasonable deduction is that what had been waived was any further action by either party in order to terminate the lease on December 31, 1922.

That plaintiff's officers so understood and relied on that understanding is quite apparent. Their subsequent conduct, as well as their testimony, so shows. Plaintiff's officers are admittedly good business men, and it is difficult to conceive how they would permit plaintiff to incur a loss of $2,100 when, by giving a simple notice at any time during the 14 months from October 1, 1921, to December 1, 1922, they could have relieved themselves therefrom, unless they believed that such notice and any further action on their part had been waived and obviated by what was said and done by defendant.

The reservation contained in defendant's consent to the sublease has already been referred to. If that was intended to limit the effect of what had previously been said and done, we think it came too late.

A sufficient consideration for the waiver is found in the detriment to this plaintiff and its change of situation in reliance on defendant's words and conduct.

Waiver and estoppel are closely related and are often difficult to differentiate. The complaint pleads facts sufficient to constitute

waiver, although therein alleged as an estoppel. The facts pleaded and proved more properly constitute waiver. The case of Citizens Bank Bldg. v. L. & E. Wertheimer, 126 Ark. 38, 189 S. W. 361, Ann. Cas. 1917E, 520, holds that written notice to terminate a lease is waived where the lessee gives oral notice and the lessor does not object thereto, and by his words and conduct leads the lessee reasonably to believe the formality is waived. See also U. S. Realty & Imp. Co. v. Ewing, 172 N. Y. S. 214.

The assignments of error as to rulings on admission of evidence do not present any reversible error.

For the reason that the findings negativing estoppel and waiver are not sustained by the evidence, the order appealed from is reversed and a new trial granted.

WILSON, C. J.
I dissent.