ESTATE OF BRIESE: GRUENEBERG, Respondent, vs. BRIESE, Administratrix, Appellant.

*April 7—May 5, 1942.*

For the appellant there was a brief by *Spohn, Ross, Stevens & Lamb* of Madison, and *George B. Swan* of Beaver Dam, and oral argument by *Mr. Frank A. Ross* and *Mr. Swan*.

For the respondent there was a brief by *Lueck, Skupniewitz & Lueck* of Beaver Dam, and oral argument by *Arthur W. Lueck*.

FOWLER, J. The claimant sues to recover the value of her support which she claims the deceased promised to provide during her life. Judgment was rendered for the claimant.

The claimant lived in the home of the deceased for over thirty years and her husband lived there also until his death in 1919. The claimant is the mother of· the deceased's first wife who died in 1935. The decedent owned the house and

paid all expenses of the family except that claimant sometimes bought small items of groceries with her own funds of which no account was kept or refund made or expected. At a gathering of claimant, her children, and their families a day or so after his wife's funeral the decedent stated that he called them to see "what is going to be done about grandma," meaning the claimant, and there said in substance that he had promised his wife that he would take care of her for the rest of her life and he was going to do it. The claimant there stated that she had promised the deceased's wife that she would stay with the deceased as long as he wanted her to. The testimony of the wife's brother, who is the only witness who testified to the conversation between the decedent and his wife that preceded this gathering, was that on her death-bed the wife asked the decedent to "take care of grandma" and "to take care of Art," a brother of the wife who worked in the furniture store kept by the decedent and another brother-in-law, and that the decedent answered: "Don't worry, Jimmy [the wife], I am taking care of everything." The claimant thereafter lived with the deceased in his home until she left a year and a half later under the following circumstances: The decedent called the family group together again and told them he was going away and did not know how long he would be gone. He did not want to leave claimant in his house alone and wanted to know what was to become of her. A daughter of claimant said she could come with her "where she belonged all these years." At this meeting decedent also said to the son of the claimant, above referred to as "Art," that he was going to fulfil his wife's wishes and take care of grandma as long as she lived.

During all the years up to the time of the death of the deceased's wife the claimant had done the greater part of the housework and procured the family supplies. Upon the evidence the court found her services were worth $7.50 per week. After the wife's death she continued to keep house

for decedent, and the court found that these services were worth $10 per week. There was no agreement of the decedent to pay for any of these services and no expectation of payment by the claimant.

The claimant left the home of decedent on July 2, 1937. The decedent had left the house at 4 a. m., June 17th, saying to claimant that he would be back at 8 o'clock. He left for California to marry his second wife without returning at 8 o'clock or giving or sending any word to claimant as to why he did not come back or where he was going or when he would return or leaving any address. The deceased did not tell claimant or any of the family what he was leaving for, but told the son of claimant that he would be gone a week or ten days. The claimant took offense at the decedent's not returning to the house on leaving for California as he said he would and for not telling her of his plans and when he would come back from his trip. On July 2d, the day before decedent returned with his wife, the claimant left the decedent's home taking with her some household goods which she claimed belonged to her and went to her daughter's. The deceased claimed these goods or part of them belonged to him and took offense at her taking them. He did not ask her to return. The two only met twice afterwards, once when claimant demanded her securities from decedent which he held and had kept invested for her without charge and again when claimant's pastor endeavored to get the two reconciled. On these facts the court held that the deceased was under a moral obligation to compensate the claimant for her services, and that this constituted a sufficient consideration to support his promise to support her for the rest of her life. Judgment was entered at the rate of $10 per week from the time claimant left decedent's home to the time of decedent's death and thereafter during her expectancy as shown by the statutory mortality table,—relying on the decisions of this court in *Estate of Hatten,* 233 Wis. 199, 288 N. W. 278; *Estate of*

*Schoenkerman,* 236 Wis. 311, 294 N. W. 810; *Estate of Smith,* 226 Wis. 556, 277 N. W. 141; and *Park Falls State Bank v. Fordyce,* 206 Wis. 628, 238 N. W. 516.

The sole question for determination is whether the decisions above cited under the facts above stated sustain the judgment. We consider that they do not. Under those facts the family relation existed between the decedent and the claimant, and where such relation exists no legal obligation exists one to the other for payment for services or furnishing of support as between adults. *Randall v. Beidle,* 239 Wis. 285, 1 N. W. (2d) 71. In the first place there is no evidence that the decedent made any promise whatsoever to the claimant. True, he told claimant's daughter, his wife, on her deathbed, in substance, that he would take care of claimant. But he also told his wife that he would take care of her brother, Art. Did this statement obligate the decedent to support Art as long as he should live? Manifestly not. The only thing that makes the situation as to the claimant any different from the situation as to Art is that Art had been living in his own home, doubtless supporting himself and his family on the wages he had received from the decedent and his partner for his work in their store, while the claimant had been living as a member of a family, performing service for the family while the decedent supplied the family home and the family table. What the decedent promised was no more, at most, than that the claimant might remain in his home as long as she wanted. Nor did her promise to her daughter require her to remain any longer than she wanted. One's mere promise to a relative about to die that he will give something to or do something for a surviving relative creates no legal obligation even under the third-party doctrine of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, and the multitude of its later applications cited in Shepard's Wisconsin Annotations. There is in such case no third-party contract because no consideration passes from the promisor

to create a contract between the dying and the surviving relative. No contract having been created between the deceased and his dying wife there is no contract to enforce for the benefit of the claimant. It is fundamental that love and affection only is not sufficient to validate an unexecuted promise to make a gift or do a service. See 6 R. C. L. p. 653, and cases cited in note 4. The only consideration for the promise of the decedent to his dying wife was love and affection, and that, as in other cases, is an insufficient consideration to support a contract for future performance.

The moral-consideration rule of the *Park Falls State Bank Case, supra,* invoked in the *Hatten Case, supra,* is here invoked. Assuming the rule was properly applied in the latter case, the service of the wife for the husband here involved did not create a moral obligation to pay the wife for those services by furnishing support to her mother, because the services of the wife created no duty on the husband's part, legal or moral, to make pecuniary return therefor. The rule of the *Park Falls State Bank Case, supra,* roughly stated is, page 637 of the opinion, "that receipt by the promisor of an actual benefit will support an executory promise" is limited to pecuniary benefits received, as examination of the cases there cited in support of the rule stated disclose. The rule does not apply to benefits received which it was the legal and moral duty of the promisee to confer without compensation, else any promise made by a husband to his wife becomes legally enforcible. Reasonable application of the rule invoked by respondent falls far short of reaching the instant case.

*By the Court.*—The judgment of the county court is reversed, and the record is remanded with instructions to enter judgment disallowing the claim of respondent.