[Civil No. 4665. Filed July 2, 1945.]

[160 Pac. (2d) 321.]

D. J. STEWART, as Administrator of the Estate of William W. Damron, Deceased, Appellant, v. ELIZABETH DAMRON, a Widow, Appellee.

Mr. W. J. Van Spanckeren, for Appellant.

Messrs. Snell, Strouss & Wilmer, and Mr. Richard G. Johnson, for Appellee.

MORGAN, J.—Plaintiff brought this action to establish her title in and require Wallace A. Macdonald, administrator of the estate of the deceased, to convey to her a lot, with improvements, situate in the city of Mesa. The grounds of the complaint were that deceased, pursuant to an oral gift agreement, held the property during his lifetime as a trustee for plaintiff. The claim was contested by the administrator. Upon the trial, with the advisory verdict of the jury on interrogatories submitted, all issues were found in favor of plaintiff and judgment entered in her behalf. Various motions by the defendant, including motion and supplemental motion for new trial

on the ground of newly discovered evidence, were denied by the court. From the judgment and denial of motions, defendant appealed. During the pendency of the appeal, the present administrator was substituted in lieu of the original defendant-administrator.

The facts proven and as found by the trial court and jury may be summarized as follows: Plaintiff was the mother of the deceased, who was generally known as Bill Damron. She was an elderly woman of modest means, living at Mesa. There existed a very strong bond of affection and relationship of trust and confidence between the mother and son; he was a man of considerable wealth and had taken her on numerous trips; she generally spent several months each summer with him at his home in Kentucky. In 1930 plaintiff had married Wallace A. Macdonald, the original administrator mentioned above. They did not get along and were for the most part not living together in 1937. At that time plaintiff was being supported from the proceeds of property which she had previously sold, rentals from a house and roomers, income from a trust fund established by her son Bill, and money gifts which he sent her from time to time. Bill disliked his mother's husband and appears to have had no confidence in him.

In 1937 Bill Damron came to Mesa and visited his mother. Another son, Roy, who resided in Los Angeles, came to Mesa at about the same time. The mother desired to build some rental houses. The two brothers talked over the matter with their mother and an understanding was reached whereby Bill agreed to assist his mother with funds in the purchase of a lot and for the construction of apartments. Roy was to make the plans, work on and supervise the construction. Legal title was to be taken in Bill's name and held by him for the plaintiff until her marital

difficulties could be settled or terminated. Pursuant to this agreement, the lot was purchased and the apartments constructed. One-ninth ($50) of the actual purchase price was paid by the plaintiff; she also expended $400 in the making of the improvements, the total expenditures being about $6,000. The balance of the funds used represented remittances sent to her by her son Bill, or directly to Roy, or through a brother-in-law. The jury found that these remittances were outright gifts and were not ear-marked for construction purposes. Roy worked for seven months without compensation. The building program was carried on in his mother's name. She issued checks and paid all accounts. No account was made by her to her son. When the structures were completed, she took possession and received all income. On many occasions Bill spoke of the houses as his mother's stating that they were hers and that he was holding the title for her. The plaintiff divorced Macdonald in 1939. Following that, Bill told his mother that he would deed her the property when he came to Arizona in about two months. He did not return to Arizona, and was killed in an accident on August 1, 1941, before executing the conveyance.

The assignments of error raise questions as to the sufficiency of the evidence to justify the answers of the jury and the judgment entered. Assignment is also made that the court abused its discretion in failing to grant motion for new trial based on newly discovered evidence.

The questions raised by defendant on this appeal may be stated as follows: (1) The transaction did not constitute a valid gift; (2) the evidence is insufficient to support an estoppel against the deceased, or to bring the case within the exception of the statute of frauds, or to create a trust upon the property involved; (3) the court abused its discretion in failing to grant a new trial, in that it appeared on the

hearing of the motion that a letter, containing evidence not cumulative in character and which it is reasonably probable influenced the jury, was admitted on false testimony, the falsity of which could not have been discovered by the exercise of reasonable diligence at the time of the trial.

 In support of his first proposition, defendant takes the position that where there is an attempt to establish a gift of real estate *inter vivos,* or an attempt made to make an imperfect gift valid, under the equitable doctrine of estoppel the plaintiff has the burden to establish the case beyond the ordinary burden assumed in a civil action. Various cases are cited to the effect that the evidence must be certain, clear, complete, direct, positive, express and satisfactory. The gift is required to be established by clear, definite and certain proof. *Kelley* v. *Crawford,* 112 Wis. 368, 88 N. W. 296; *Caldwell* v. *Caldwell,* 24 Pa. Super. 230; *Flanigan* v. *Waters,* 57 Kan. 18, 45 Pac. 56; *Lobdell* v. *Lobdell,* 36 N. Y. 327. Attention is called to *Costello* v. *Cunningham,* 16 Ariz. 447, 147 Pac. 701, 710, where in a case to establish a trust against the record title holder, this court held: ''The burden was upon the plaintiffs to establish, by clear and convincing evidence, ownership'' of the property claimed. The intent of the donor is a controlling factor in questions concerning gifts. Where the donor has died, his statements are scrutinized with particular care. *Owens* v. *McNally,* 113 Cal. 444, 45 Pac. 710, 33 A. L. R. 369. To constitute a completed or valid gift, the donor must intend to relinquish the right of dominion over the property and create it in the donee, and his intention must be to make a present gift. A mere intention to give in the future will not be sufficient. 24 Am. Jur. 738–740, § 21, Gifts.

The legal principles invoked by defendant are undoubtedly correct. There can be no question that the testimony must be clear and convincing in cases of

this character. We so announced the rule in the late case of *Stewart* v. *Schnepf*, 62 Ariz. 440, 158 Pac. (2d) 529. An examination of the testimony indicates that it meets the requirements of the rule as announced and applied by this court in both the Costello and Stewart cases, *supra*.

■ Strictly speaking, this is not an action to attempt to create a trust, but to enforce a trust already created. The evidence, we think, clearly showed that the deceased took and held the title to the property involved as trustee for the plaintiff. She took possession and made valuable and lasting improvements. In these respects the trust was completed. Nothing remained to be done except to transfer the legal title to the plaintiff upon the contingency of divorce from her husband. This is all that is being sought in this action. The proof adduced, disclosing the intent of the deceased to take and hold the property as trustee for his mother, indicates not only the present intent but when the title was so taken, and possession and improvements made, the completion of the gift. The evidence does not disclose an intent to give in the future. Therefore, the authorities cited by defendant concerning an incompleted gift or an uncreated trust do not apply to the situation here. Indeed, the decisions which we have mentioned above, Kelley v. Crawford; Caldwell v. Caldwell; Flanigan v. Waters; and Lobdell v. Lobdell, cited by the defendant, fully support the statement which we have just made. In each of these cases specific performance was allowed to the plaintiff on facts somewhat similar to those in the case at bar.

■ A parol gift of land may be said to be upon the same footing as a parol sale of land. The rule as to this is succinctly stated in 24 Am. Jur. 764, § 68, Gifts:

" . . . It has been said that a parol gift of land is on the same footing as a parol sale of land, and that

in order to take a parol gift of land out of the statute of frauds possession must be taken in pursuance of the gift, and as a further condition to the consummation of the equitable right and title, the donee must have made improvements of a valuable and permanent character, induced thereto by the promise to give the land. When these conditions and considerations have followed, the performance of the promise, although by parol, can be enforced in equity, and the donee becomes entitled to specific performance. . . . ''

What we have just said and quoted applies more particularly to defendant's second proposition. However, both propositions may best be considered as once since they are inextricable. The same rules of law apply, at least partially, to both.

 Our statute of frauds does not contain any direct provision pertaining to the creation of trusts. The seventh section of the English statute, providing that a trust must be manifested by writing, was not adopted by our Legislature. Under the common law an express parol trust in land is valid and provable without a writing. 65 C. J. 244, § 32, Trusts. This court has held an express parol trust to be within the statute of frauds. *Cashion* v. *Bank of Arizona,* 30 Ariz. 172, 245 Pac. 360. The holding was approved in *MacRae* v. *MacRae,* 37 Ariz. 307, 294 Pac. 280. Even though the wisdom of those decisions might be doubted, we feel that the matter is foreclosed by the rule: *Stare decisis et non quieta movere.*

 Regardless of all this, however, an express parol trust may be taken out of the statute of frauds by part performance. 65 C. J. 259, § 39, Trusts. The parol agreement is not void, it is merely voidable, and where there is part performance, evidence of the parol trust is proper and competent, and in such cases if the evidence warrants relief, the trust will be equitably enforced. *Neilly* v. *Hennessey,* 208 Iowa 1338, 220 N. W. 47; *Straw* v. *Mower,* 99 Vt. 56, 130 Atl. 687; *Townsend* v. *Vanderworker,* 160 U. S. 171, 16

Sup. Ct. 258, 40 L. Ed. 383; *Purcell* v. *Corder,* 33 Okl. 68, 124 Pac. 457.

■ This brings us to a consideration of the question as to the sufficiency of the performance to take the case out of the statute so as to allow proof of the trust and authorize specific performance. Since the evidence in this case was resolved favorably for the plaintiff by the jury and the trial court, and the appeal is from the judgment and order denying motion for new trial, our consideration of the facts must be guided by the principles as set forth in *Stewart* v. *Schnepf, supra* [158 Pac. (2d) 531]:

" . . . These applicable principles are that upon an appeal from a judgment and order denying a motion for a new trial, all reasonable inferences which may be drawn from the evidence supporting the judgment and order appealed from will be so drawn and applied; that all conflicts in the evidence will be resolved in favor of the appellees; and all evidence in the record, unless inherently impossible or improbable, supporting the judgment and order appealed from, is taken as true. (Citing cases)."

What is the situation in the case at bar? Briefly, it is a case where an affluent son, desiring security for his mother, provided her with the means to purchase and construct rental buildings from which she would be assured of an income. To avoid any claims of an impecunious husband, he was to retain the title in his name as trustee until, by divorce or otherwise, no assertion of claim or interest in the property could be made by the husband. All of this was done, the property acquired, the buildings completed and possession taken by the plaintiff. As we have heretofore stated, the trust was not only partially performed but fully completed except for the delivery of a deed vesting the mother with the legal title. When we apply the reasonable inference rule, as stated above, there can be little question as to the actual intent of Bill Damron. If this were a case

where the title was taken in the name of the deceased, and the mother herself had put up the money to purchase the property and to construct the buildings, there could be no question as to performance. The same rule, it seems to us, is applicable under the circumstances in this case. Although the greater part of the money used in the purchase of the property and in the building program originally came from the deceased, it came to her as a gift, and when she used it in the construction or the acquisition of property, it was her money.

The rule has been applied that where the relationship of parent and child exists, less evidence is required to establish a gift from a parent to a child than to a stranger. 39 Am. Jur. 742, § 97, Parent and Child. It seems to us that for a far greater reason the rule is even more applicable where the gift is from a son to a mother. Love and affection have always been considered as a sufficient and valid consideration for an executed agreement. The rule is not based upon purely platonic principles, but on the theory that where a grantor conveys to a grantee for love and affection, the real consideration is largely for either past or expected future services such as association, care, mutual assistance, companionship, understanding, and support. The rule applies only where a near relationship exists. *Blount* v. *Blount,* 4 N. C. 389. Love and affection as a consideration applies only to executed contracts or gifts. *Brown* v. *Addington,* 114 Ind. App. 404, 52 N. E. (2d) 640; *In re Briese's Estate,* 240 Wis. 426, 3 N. W. (2d) 691.

In the case at bar, when the son made provision for his mother he undoubtedly felt, and the law assumes, that there was a full and adequate consideration for the executed money gifts which he made to her. The services of a mother to a child are a sufficient consideration to sustain any reasonable completed transaction between them. The plaintiff not

only brought her son into the world but cared for him, as mothers do. She guided his first tottering footsteps and lavished upon him love and affection for which there can be no recompense. The thought that there was an adequate consideration in the mind of the deceased may be expressed in the words of Tennyson:

> "Happy he
> With such a mother; Faith in womankind
> Beats with his blood, and trust in all things high
> Comes easy to him, and though he trip and fall
> He shall not blind his soul with clay."

The high value of the mother's services is evidenced by the sentiment so beautifully written by Ann Taylor:

> "Who ran to help me when I fell,
> And would some pretty story tell,
> Or kiss the place to make it well?
> My mother."

With these considerations in mind, it appears to us that the evidence and the reasonable inferences to be drawn therefrom justified the court and jury in finding that the deceased had a present intention to make a gift and that the various remittances constituted completed gifts. This being so, the monies received from her son by the plaintiff, or used in the purchase of the property, or which were sent directly to Roy, were, under the findings, the plaintiff's. When the money was expended for the construction of the apartments, it was her money, and therefore the whole consideration may be treated as being paid by her.

The general rule of law is that when a gift is completely executed, as when a sum of money is given to or on behalf of the donee without limitation, the donor loses all title or rights to the fund. The donee may use it as he or she sees fit. The court and jury found that all monies in connection with the transaction advanced by the deceased were with the

intention of using or transferring the funds for the benefit of the plaintiff and without a limitation on their use. In other words, an executed gift. 24 Am. Jur. 755, § 46, Gifts; 38 C. J. S., Gifts, § 40, p. 818. The value of Roy's work and services also went into these improvements. They were not paid for but performed by him on behalf of his mother and pursuant to the agreement. The law is that improvements made for a donee by another person, pending the donee's possession and on the faith of the gift, is upon the same footing as if they were made by the donee. *Walker* v. *Neil,* 117 Ga. °733, 45 S. E. 387; *Roberts-Horsfield* v. *Gedicks,* 94 N. J. Eq. 82, 118 Atl. 275, affirmed as *Roberts-Horsfield* v. *Gedicks,* 96 N. J. Eq. 384, 124 Atl. 925. Under these circumstances it would be inequitable to allow the legal title to remain in possession of the son or his heirs In the absence of an express agreement, or the failure thereof, a resulting trust would arise which would authorize relief and is not within the statute. *Collins* v. *Collins,* 46 Ariz. 485, 52 Pac. (2d) 1169.

The case of *Ward* v. *Jones* (Tex. Civ. App.), 293 S. W. 604, is in many respects analogous to the present case and fully sustains the views we have heretofore expressed. There the donor delivered a $5,000 check to his grandson and wife. The proceeds were used to buy a lot, which was taken in the name of the donor, and in erecting a home on the lot so purchased. The testimony was in conflict in respect to the purpose for which the check was issued. The finding of the trial court and jury was that the money was given as a gift for the purpose of acquiring a home for the grandson and his wife. The appellate court held that the gift became completed when the check was delivered and the ownership of the property vested in the donees when purchased, even though the legal title was taken in the name of the donor.

■ We are not unmindful of the decision of the Georgia Court of Appeals, in *Hodgson* v. *Hodgson,* 28 Ga. App. 250, 110 S. E. 754, holding that improvements made by the donor for the donee's benefit on property of which she had taken possession under a parol gift could not be utilized under the rule that making valuable improvements takes the gift or the trust out of the statute. In that case the donor himself actually made the improvements. Here, the money was sent to or for the donee who, herself, made the improvements. It is well settled that a parol gift of land followed by possession and improvements will be specifically enforced. *Kendall* v. *Metroz,* 65 Colo. 387, 176 Pac. 473; *Lembke* v. *Lembke,* 194 Iowa 808, 187 N. W. 863; *Evenson* v. *Amodt,* 153 Minn. 14, 189 N. W. 584; *Chamberlain* v. *Chamberlain,* 115 Fla. 21, 155 So. 136.

Since we must presume under the findings that the money advances made by the deceased to his mother were completed gifts, then it follows that it was her money which she used in making the improvements. All the requisites necessary for specific performance appear,—an agreement to convey, a present gift, possession thereunder, and the making of valuable and lasting improvements at the expense of the donee.

■ We are unable to pass upon the merits of defendant's third proposition. We find that testimony was taken at the hearing on the motion for new trial which has not been made a part of the record. We cannot, therefore, determine whether the court abused its discretion since the testimony is not before us. In such circumstances, we must presume that the order of the trial court was correct. *Primrock* v. *Wilson,* 55 Ariz. 192, 100 Pac. (2d) 180; *Onekama Land Co.* v. *Carothers,* 59 Ariz. 416, 129 Pac. (2d) 918; *Border Gypsum, etc., Co.* v. *House,* 60 Ariz. 122, 132 Pac. (2d) 435.

The judgment of the lower court is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.