Merchants' National Bank, Respondent, *v.* Eben Rich-
        ards, Interpleader, Appellant.

January 28, 1879.

1. Where, without objection, an order for an interpleader has been made, and
   the interplea heard upon its merits, the question as to whether the chan-
   cellor might have required an affidavit before making the order is unim-
   portant.

2. In the absence of a legislative enactment restricting the transfer of stock to
   any particular mode, the transfer is complete on delivery of the certificate
   with power to transfer, and payment of the purchase-money, not only
   between vendor and vendee, but, when the corporation has unjustifiably
   refused to make the transfer on its books, against a creditor of the vendor
   who without notice of the transfer attaches the stock.

3. The doctrine of a negative pregnant is not recognized in Missouri.

4. Where the petition alleges that plaintiff owns the stock, and the reply sets
   up a special ownership as pledgee, this is not a departure, the action being
   for damages against a corporation for refusing to transfer the stock on its
   books.

Appeal from St. Louis Circuit Court.
*Affirmed.*

E. W. Pattison and J. S. Garland, for appellant:
" There is no affidavit, not even a statement in the answer
that defendant was not in collusion with the party asked to
interplead.    This is absolutely necessary." — Simon on In-
terpl. 4, 5 ; 2 Story's Eq. Jur., sect. 809 ; Story's Eq. Pl.,
sect. 291 ; *Gibson* v. *Goldthwaite*, 7 Ala. 281 ; *Shaw* v. *Cos-
ter*, 2 Edw. Ch. 405 ; 8 Paige, 339 ; *Tobin* v. *Wilson*, 3 J. J.
Marsh. 63.    If the defendant is in a position where he may
be liable to both plaintiff and the interpleader, there is no
room for an interplea. — *Farr* v. *Ward*, 2 Mee. & W. 844 ;
*Hathaway* v. *Foy*, 40 Mo. 543 ; *United States* v. *Victor*,
16 Abb. Pr. 153 ; *Morgan* v. *Filmore*, 18 Abb. Pr. 217.
The reply constituted a departure from the petition. — 1
Chitty's Pl. 674 ; *Tarleton* v. *Wells*, 2 N. H. 306 ; *The State*
v. *Grimsley*, 19 Mo. 171 ; *Railroad Co.* v. *McKernan*, 24
Ind. 62.    The attachment was good, the transfer of the

stock to the bank, not having been made on the books of the company, being insufficient to pass the title to the stock. — *Williams* v. *Bank*, 7 Blatchf. 59 ; *Pinkerton* v. *Railroad Co.*, 42 N. H. 447 ; *White* v. *Salisbury*, 33 Mo. 150 ; *Colt* v. *Ives*, 31 Conn. 25 ; *Boatman's, etc., Trust Co.* v. *Able*, 48 Mo. 136 ; *Kortright* v. *Bank*, 22 Wend. 348 ; *Fisher* v. *Bank*, 5 Gray, 373. The blanks must be filled before the rights of third parties intervene. — *Woolley* v. *Constant*, 4 Johns. 54 ; *Dunn* v. *Bank*, 11 Barb. 580.

FINKELNBURG & RASSIEUR, for respondent: A transfer of stock by assignment and delivery of stock-certificate is sufficient as between the parties, and passes the title without transfer on the books of the corporation. — *Insurance Co.* v. *Goodfellow*, 9 Mo. 149 ; *Bank* v. *Lanier*, 11 Wall. 377 ; *Chouteau Spring Co.* v. *Harris*, 20 Mo. 390 ; *Kellogg* v. *Stockwell*, 75 Ill. 68 ; *Moore* v. *Bank*, 52 Mo. 377 ; *German, etc.,* v. *Sendmeyer*, 50 Pa. St. 67. And such an assignment of stock, accompanied by a power of attorney to transfer on the books of the corporation, though both were executed *in blank* on the back of the certificate, is sufficient to pass the title, and it may pass from hand to hand without being filled up. — *Leavitt* v. *Fisher*, 4 Duer, 1 ; *Railroad Co.* v. *Selinger*, 34 N. Y. 45 ; *McNeil* v. *Bank*, 46 N. Y. 325 ; *Kortright* v. *Bank*, 20 Wend. 91 ; 22 Wend. 348 ; *Matthews* v. *Bank*, 1 Holmes, 396 ; *Mount Holly Co.* v. *Ferree*, 17 N. J. Eq. 17 ; *Bank* v. *Railroad Co.*, 30 Conn. 273.


BAKEWELL, J., delivered the opinion of the court.

On January 10, 1877, plaintiff commenced the present action to recover a dividend on three hundred and ten shares of the capital stock of defendant, which plaintiff claimed to own. Defendant answered that on December 26, 1875, three hundred and ten shares of its stock stood on its books as owned by one Ray, for which defendant had issued two

certificates of stock, covering together the above number of shares, which stock is transferable on the books of the company ; that at the date last named, plaintiff, late in the day, represented itself to defendant as the owner of this stock, and required defendant to permit a transfer on its books of the stock to plaintiff ; that defendant requested until next day to consult its legal adviser as to its duty in the premises ; that next day the Missouri Zinc Company caused the stock in question to be seized by the sheriff and attached in defendant's hands, as the property of Ray, for a claim of $33,000, by virtue of an attachment commenced by said Zinc Company against Ray, who is a non-resident ; that after the levy of this attachment plaintiff again applied for a transfer of the stock, which defendant refused on account of the attachment ; that afterwards, by virtue of proceedings in this attachment suit, the interest of Ray at the date of the attachment, in this stock, was sold, and purchased by Richards, who then demanded a transfer of the stock on the books of the company to him, which defendant refused ; that before this application of Richards, plaintiff had sued defendant for damages for not permitting the transfer to plaintiff ; and that the present suit is for dividends since the damage suit, which became due December 21, 1876.   Defendant says it has no claim on the stock, or interest in it, and has declined to transfer it only because it cannot know to whom the transfer should be made ; that it is willing to transfer the stock, and pay the sum of $3,100, due for dividends, to the real owner of the stock.   Defendant prays that plaintiff and Richards be required to interplead, etc.

Richards was accordingly summoned to interplead.   He denies all knowledge of plaintiff's claim and of its demand for a transfer of the stock, and claims to own the stock by virtue of the proceedings set forth in defendant's answer.

To the interplea of Richards plaintiff files a reply, in which it alleges that it acquired the stock long prior to

the attachment, by a pledge from Ray to secure $20,000 due by Ray to plaintiff; and says that its demand for a transfer was repeatedly made, long before the attachment.

Upon the final hearing, the court decreed that plaintiff is entitled to the dividends, to be credited on the indebtedness of Ray; and also to have the stock transferred on the books of the company to plaintiff, and to hold the stock and dividends until the debt of Ray is paid; and that the interpleader may redeem the stock at any time by paying the balance due on the loan.

The evidence shows that plaintiff was organized under the act of June 3, 1864. Defendant is a corporation carrying on the business of refining sugars. Its charter provides that the stock shall be personal property, transferable as the by-laws prescribe. These by-laws provide that no certificate of stock shall be issued to an assignee until that issued to his assignor is returned and cancelled. All transfers must be made in the record-book, and attested by a subscribing witness. The two certificates in question stated on their face that they were transferable on the books of the company only in conformity to the charter and by-laws. The loan to Ray & Co., who were New York merchants, was made by simply giving to them, as customers of plaintiff, a credit for $20,000 on their pass-book. The certificates were then handed to the cashier of plaintiff, and the printed form of assignment on the back of the certificate was already signed by Ray. The assignment purports to transfer to ——— — shares of the capital stock of defendant, represented by the certificate, and to appoint ——— the attorney irrevocable of the assignor to make any necessary act of transfer on the books of the company and to substitute other attorneys for that purpose. The signature is attested by a subscribing witness. The witness died before the trial. His name and that of Ray were written on the back of the certificates long prior to the loan in question, for the purpose of effecting other loans. Ray

& Co. failed. Their average balance with plaintiff was $15,000 to $20,000. They were constantly depositing and drawing out funds, to the date of their failure. The original loan remained unpaid, except as to some payments of interest, at the date of Ray & Co.'s failure, in December, 1875, when the bank at once sent them to the German Bank, its correspondent in St. Louis, with instructions to have the transfer made on the books of the company. On the evening of December 26th the German Bank received the certificates, and next morning an employee of that bank called at the office of defendant and requested a transfer of the certificates. The secretary was not in, and the messenger was told that it could not be done in his absence, and was requested to call again ; which he did in the same afternoon, when he was told that the transfer could not be made in the absence of the president ; that a meeting of directors would be at once called about the matter, and the employee was requested to come next day. He did so, and was informed that defendant would not permit the transfer. No reason was given for the refusal. The cashier of the German Bank then called about the matter, on the same afternoon, and was informed by the president and secretary that the transfer must be declined on account of rumors of Ray's failure ; but that they would take legal advice, and give a definite answer. Next day the permission was definitely refused. The cashier of the German Bank then put the matter in the hands of the attorney of the bank, who demanded a transfer on the 28th and 29th, with the same result. On the morning of the 29th, legal proceedings were threatened, and then the objection was made that the assignment was in blank. The attorney offered to fill the blank, but was told that a transfer would in no case be permitted, because the Missouri Zinc Company had attached. On the same day, plaintiff commenced suit against defendant for damages for refusal to transfer the stock. This action was pending at the date of the trial of the present case.

The attachment suit of the Zinc Company was instituted on December 28th, and on the same day was levied on Ray's interest in five hundred and eight shares of the Belcher Refining Company, including the shares in question.   In this suit judgment was obtained, under which all the interest of Ray in the shares was sold, and Eben Richards, the interpleader, became the purchaser of them at a receiver's sale.   Richards was president of the Zinc Company at the time.   At the date of the purchase, Richards knew of the claim of plaintiff; but at the date of the attachment the Zinc Company had no notice of the claim against the shares.   Meanwhile the present action was brought to recover the dividends, which had been demanded by plaintiff's attorneys in December, 1876, and refused on the ground that the title was in litigation.

It is claimed by appellant that the allegations of the answer of defendant make no case to warrant the court in compelling plaintiff and Richards to interplead, because there is no affidavit and no statement in the answer that defendant is not in collusion with either of the parties asked to interplead, and because defendant, being in a position that it may be liable to both parties, — to plaintiff for damages for a wrongful refusal, and to Richards if in consequence of that refusal he has acquired a right, — does not stand in a position of indifference, and cannot withdraw and leave plaintiff and Richards to litigate.   Appellant claims that the litigation is not between him and the bank, but between the Belcher Refining Company and the bank ; and that he ought to be left to his remedy against the Refining Company, without reference to any litigation between the bank and the Refining Company.

The appellant having pleaded, and in his plea asked the court to determine the question of the rights to this stock as between himself and the Merchants' National Bank, ought not now to be heard to object to the jurisdiction. If an affidavit was requisite under our system of pleading,

which seems not to be the case, this was a matter important only as an element in determining the chancellor to make the order for an interpleader, which the answer prayed. The case having been heard upon its merits, without objection, the question as to whether the chancellor might have required an affidavit before requiring Richards to interplead is now quite unimportant. As to the interest of the Belcher Refining Company, it is plain that, while it may be compellable to transfer this stock to one of the contesting parties, it cannot be bound to transfer to both. The Belcher Refining Company is not interested in the property in dispute, and, if liable for damages, can only be liable to the claimant really entitled to the stock.

If, in the present case, the assignment of the stock, accompanied by a power of attorney to transfer on the books of the company, both executed in blank on the back of the certificate, was sufficient to pass the title to the shares, was sufficient between the parties, and gave title to the pledgee without transfer on the books of the corporation, there appears to be no sufficient reason why this judgment should be reversed. If it was good between Ray and the plaintiff, it was good as against the Missouri Zinc Company, and as against the interpleader, who can have no better claim than the Zinc Company, and who purchased with full notice of plaintiff's claim.

The attachment was not levied until two years after the transfer by Ray to plaintiff, and not until after the bank had been requested to transfer the shares upon its books. The creditor could have no better rights than the debtor; and his attachment could reach only such property in the shares as the debtor actually had at the time the levy was made. If the property, when attached, was subject to a lien placed upon it by the defendant in the attachment, in good faith, that lien must be respected, and the attachment postponed to it. Drake on Attach., sect. 223.

It would seem to be well settled that the purpose of re-

quiring a transfer of stock upon the books of the bank is that the bank may know who are its shareholders entitled to vote and to receive dividends, and also to protect *bonâ fide* purchasers and creditors, and persons dealing with the bank. The right of a shareholder of a solvent institution to make a sale of his shares is not in any way subject to the control of the corporation ; and where he has made a sale, he may compel a transfer upon the books of the corporation to his vendee. In case of a sale, the transaction is complete on delivery of the certificate with power to transfer, and payment of the purchase-money ; and when these things are done, both vendor and vendee have a legal right to have the transfer registered on the books of the bank. The authorities which support these principles will be found cited in the case of *Johnson* v. *Laflin*, recently decided in the United States Circuit Court for this circuit, by Judge Dillon, but not ·yet reported, where the whole question is exhaustively discussed. The evidence in the case at bar is that, by custom in New York, where the transfer took place in the present instance, a delivery of the stock with a power of attorney to transfer on the books, and an assignment, both in blank on the back of the certificate, enables the stock to pass from hand to hand, and such certificates have a *quasi*-negotiable character. And the custom has been held to be good, and the certificates negotiable, by repeated decisions in cases most carefully considered. *Kortright* v. *Bank*, 20 Wend. 91 ; 22 Wend. 348 ; *McNeil* v. *Bank*, 46 N. Y. 325 ; *Matthews* v. *Bank*, 1 Holmes, 396. " Such certificates," says Davis, J., in *Bank* v. *Lanier*, 11 Wall. 377, " although neither in character nor form negotiable paper, approximate to it as nearly as practicable."

Our attention is especially called by counsel for appellant to *Fisher* v. *Bank*, 5 Gray, 373. In that case it is decided that shares in a bank whose charter provides that they " shall· be transferable only at its banking-house, or on its books," cannot be effectually transferred, as

against a creditor of the vendor, who attaches them without notice of any transfer, by a delivery of the certificate thereof together with an assignment and blank power, as in the case at bar, even if notice of such transfer be given to the bank before the attachment. That case turns upon the language of the charter, which is a public act in Massachusetts. In the present case, there is no question of an act of the Legislature expressly restraining transfer of the stock to any particular mode; and in Massachusetts, in *Sargent* v. *Essex Railway*, 9 Pick. 205, it had already been held that where, as in the case at bar, the by-laws of a corporation required all transfers of shares to be made on the books of the company by the treasurer, an assignment by deed, accompanied by delivery of the shares to the vendee, is valid without any transfer on the books of the corporation, not only between vendor and vendee, but against a creditor of the former who attached the shares before any notice of the sale had been given to himself or to the treasurer of the corporation. It has been held elsewhere than in Massachusetts that, where, by law of the State or the act of incorporation, the shares are transferable on the books, the legal title cannot otherwise be acquired. *Union Bank* v. *Laird*, 2 Wheat. 390. But in the absence of any express rule of law, as is said by Chief Justice Shaw in *Fisher* v. *Essex Bank*, courts have felt bound to adopt the common-law rule in determining what constitutes an absolute transfer of shares, and have held, in accordance with the general rules for the transfer of similar incorporeal interests, that a delivery of the only muniment of title held by the owner, with execution and delivery of an assignment of his interest by indorsement on the certificate or otherwise, should, by analogy, be held a valid transfer, and, when notified to the corporation, should be considered as having taken effect at the date of such delivery.

It was early held in Missouri (*Insurance Co* v. *Good-*

*fellow*, 9 Mo. 150; *Chouteau Spring Co.* v. *Harris*, 20 Mo. 382) that the object of provisions requiring the registry of the transfer of stocks was merely for the benefit of the company; that a transfer not registered on the company's books is binding, and passes all the rights of the party making it; and that a refusal to register the transfer at the request of the assignee is an unlawful act on the part of the corporation. There is a *dictum* to the contrary in *White* v. *Salisbury*, 33 Mo. 150. In *Boatmen's Insurance Company* v. *Able*, 48 Mo. 136, it is said that an assignment of a stock-certificate does not of itself pass title, but gives an equity to compel a transfer upon the books, except as against a *bona fide* purchaser who has acquired title by such transfer. But in *Moore* v. *Bank*, 52 Mo. 379, it is held that the transfer on the books of the company is merely cumulative, and that, whether so entered or not, the title to the stock, as between the parties to the transfer, passes by a transfer and sale of the certificate; and the earlier Missouri cases on the question are cited with approval.

It is contended that the transfer to plaintiff was void as to creditors under the statutes of Missouri and New York, which require a delivery and actual and continued change of possession of the thing sold. We do not see how this position can be maintained, since the thing sold was shares of stock, and the certificates were actually delivered. Nor can it be maintained that creditors of Ray may have been deceived in extending him credit by the non-transfer of the shares on the books of the company. If the title to the shares passed by indorsement and delivery, the fact that the shares remain in the name of the vendor on the books of the company is not a sufficient reason for extending credit on the faith of ownership of the shares. The shares are not in the possession of the assignor merely because they stand in his name on the books of the corporation, and a *bona fide* transfer of the certificates of stock cannot

be said to imply a secret trust.    If this is to be considered as a race between two creditors, the creditor who has obtained actual possession of the stock seems to be in better position, according to the maxim *"Potior est conditio possidentis."*

It is insisted by appellant that, by a negative pregnant in his reply, the plaintiff admits that Richards owns the stock.    The doctrine of a negative pregnant seems not to be recognized in Missouri.    The denial of a complex statement in the very language in which it is made is not careful pleading ; but where the purpose of the pleader is clear, it is sufficient to put in issue all the material facts in the allegation denied, as if each were disjunctively stated and denied, unless a case is presented in which the answer must be fairly regarded as ambiguous.    *Wynn* v. *Cory*, 43 Mo. 304.

It is also said by appellant that there is a departure in the pleadings, inasmuch as the petition states that plaintiff holds and owns the stock, and the reply that it holds the stock as pledgee.    These statements are not inconsistent. The pledgee is an owner.    His special ownership imposes upon him the duties of a trustee ; as such he is bound to collect dividends, and may sue in his own name.    It was not necessary for plaintiff to sell the property pledged, and become the absolute owner by foreclosure, before suing for dividends on the stock.

We are clearly of the opinion that the transfer of the stock, in the present case, passed the title as between the the parties, and that the presentation and demand of transfer was sufficient to cut out the creditor who subsequently attached.    There can be no question of the authority of the attorney of the plaintiff to fill up the blanks at the time of the presentation, in conformity with the true nature of the transaction and in pursuance of the real intention of the parties.    The transfer was not refused on the ground that the blanks were not filled.    The plaintiff had done all that

lay in its power to perfect its title by transfer on the books of the defendant before any attachment was levied. The defendant, by an unjustifiable refusal to make a transfer, could not defeat the rights of plaintiff to the stock, nor give an attaching creditor any advantage which it would not have had had defendant done its duty and made a transfer to the holder of the stock upon its books.

The judgment of the Circuit Court is affirmed. All the judges concur.