H. J. WHETSEL, Appellant, v. WILLIAM STARK FORGEY, MINNETTE S. FORGEY and EVA M. FORGEY, Appellants; and GEORGE N. DAVIS, Defendant.—20 S. W. (2d) 523.

Division Two, August 6, 1929.

*May & May, Ed. S. Jones* and *George N. Davis* for plaintiff.

*Nat M. Lacy* and *Holstetter & Haley* for William Stark Forgey and Minnette S. Forgey.

*J. W. Matson* for Eva M. Forgey.

BLAIR, P. J.—This is an action in equity, instituted and tried in the Circuit Court of Pike County, to reform a deed of trust and to foreclose said deed of trust as reformed. The property covered by the deed of trust is about 195 acres of farm land and certain town lots in Paynesville, together with buildings thereon and fixtures and other property therein, all located in Pike County. Defendants William Stark Forgey and his mother Eva M. Forgey each owned an undivided one-half interest in said property as tenants in common. Defendant Minnette S. Forgey is the wife of defendant William S. Forgey. Plaintiff is the beneficiary, and defendant George N. Davis is the trustee, in said deed of trust. The trial judge granted plaintiff partial relief, and he appealed because he did not get all the relief he asked. All of the defendants, except defendant Davis, appealed from the judgment granting plaintiff such partial relief. Defendants William Forgey and Eva M. Florgey also complain because the trial court disallowed certain affirmative relief asked for by them. The two appeals have been consolidated in this court and will be disposed of in one opinion.

The second amended petition, upon which the case was tried, is in two counts. The first count asked reformation of the deed of trust in respect to the description of the note secured thereby. It is alleged that the note bearing seven per cent interest from date, by mistake of the scrivener, was described therein as bearing interest "after maturity." The second count prays foreclosure of said deed of trust as reformed.

Defendant Eva Forgey in her verified answer denied execution of the deed of trust as set out in the petition and alleged that, if the deed so set out is the one which she signed, the same was materially altered after she signed it, without her knowledge or consent, and asked cancellation of said deed of trust and that plaintiff be enjoined from enforcing the same. She also asked judgment against the plaintiff for $670 of her money, which she claimed plaintiff had wrongfully received.

Defendant William Forgey denied under oath the execution of the deed of trust set out in the petition, and asked judgment for $8,300 against plaintiff for the alleged wrongful withholding of certain stock dividends in a corporation known as Home Coal Company.

Defendant Minnette Forgey denied execution of the deed of trust as set out in the petition, and alleged that the deed of trust she did sign had been materially altered without her knowledge or consent. Certain matters pleaded in the separate answers of the three defendants will be noticed in the course of the opinion.

Plaintiff filed replies to said separate answers, denying the new matter therein set out, and alleging certain facts which he claimed constituted ratification by the Forgeys of any alteration in the deed of trust, if it was altered after being signed by them, and alleging that defendants were thereby estopped to set up alteration of said deed of trust as a defense.

It is unnecessary to make a detailed statement of the testimony of the various witnesses. Most of the facts of the case are undisputed. The Home Coal Company was a corporation engaged in mining coal at Macon, Missouri. Plaintiff, one Bennight and defendant William Forgey owned all the stock of said corporation. William Forgey had given his notes for his stock when he acquired it and had put up said stock as collateral security for such notes. On June 5, 1921, he owed plaintiff on said notes and interest thereon the sum of about $13,800. Plaintiff was asking for better security. Defendant William Forgey offered to give plaintiff a second deed of trust on the real estate described in the deed of trust involved in this case. It seems that there was already a deed of trust on said property to secure an indebtedness amounting to nearly $6,000 in favor of a relative of defendant Eva Forgey, and this relative wanted her money. Two thousand dollars of such indebtedness appears to have been the personal debt of Eva Forgey, and the remainder the debt of William Forgey. The entire amount of both debts was secured by deed of trust on the property executed by the three Forgeys.

In June, 1921, an agreement was worked out between plaintiff and William Forgey that one note for the amount William Forgey owed to plaintiff, secured by deed of trust on the property owned by William Forgey and his mother as tenants in common, would be executed. Plaintiff then would release the stock of William Forgey in the mining company, so he could use said stock as collateral for a loan at the bank and thereby raise money to pay off the existing deed of trust on the land. Eva Forgey and Minnette Forgey appear to have been fully informed of the general nature and scope of this arrangement, though they possibly did not know all the details.

Before the arrangements were finally concluded plaintiff left Macon on a business trip and entrusted the matter to be worked out by his attorney, defendant Davis. Davis and William Forgey met and drew up the deed of trust in controversy dated June 15, 1921, de-

scribing a note for $13,800, with interest at seven per cent "after maturity." This deed of trust was signed by William Forgey and was immediately sent by him to Eva Forgey, at her home in Louisiana, in Pike County. She did not execute it at that time, but held it until she visited defendant William Forgey and his wife in Macon, about the middle of August. At that time and place the deed of trust was signed by Eva and Minnette Forgey.

The original deed of trust has been brought here for our inspection. In the first line certain changes were made. The word "fifteenth" has been marked across with red ink and the word "sixteenth" has been written above it in red ink. The word "June" has likewise been marked out and the word "August" written above it. The figures "21" were inserted in the year space, which probably had not previously been filled out. In the body of the deed of trust, where the note secured thereby is described, the words "Thirteen Thousand Eight Hundred ($13,800) Dollars" have been marked across with red ink and below them have been written in red ink the following words: "Fourteen Thousand ($14,000) Dollars."

The change from $13,800 to $14,000 is the alteration said by Eva and Minnette Forgey to have been made after they signed the deed of trust. William Forgey testified that this alteration was made by him after Eva and Minnette Forgey had signed the instrument, without their knowledge or consent, and that he then took the deed of trust to the notary public and had the certificates of acknowledgment executed. Both Eva and Minnette Forgey testified that the deed of trust described a note for $13,800 when they signed it and that the subsequent alteration, making it describe a note for $14,000, was made without their knowledge or consent.

William Forgey testified that he made the change to comply with the agreement, because the interest accrued on August 16th brought the entire amount of the debt approximately to $14,000. The amount named proved to be $7.35 too large and plaintiff subsequently gave William Forgey his check for that amount. Defendant Davis, acting for plaintiff in his absence and after receiving the $14,000 note and the said deed of trust, released the 250 shares of stock in the Home Coal Company, which William Forgey had put up as collateral for his debt to plaintiff. Thereupon a new loan was made at a bank in Bevier and the previous deed of trust on the property in controversy was released.

The note dated August 16, 1921, admittedly signed by William and Minnette Forgey, was for $14,000, payable to plaintiff in five years, with interest at seven per cent payable annually from date. The deed of trust as altered in red ink accurately described such

a note, except that it was described as bearing interest "after maturity" instead of "from date."

We will not detail the testimony on the point, but the trial court found (and the evidence abundantly supports his finding) that the parties intended to recite in the deed of trust that the note described therein bore interest from date and not from maturity and that, by mutual mistake, the printed form of the deed of trust was not changed to express the mutual agreement of the parties. There can be no doubt that William Forgey and Minnette Forgey were indebted to plaintiff on said note at the institution of this suit in the sum of $14,000, together with interest thereon from August 16, 1921, at the rate of seven per cent, less a credit of $670. Nor is there any reasonable ground to believe that plaintiff was not fully authorized to apply such credit of $670 on the note. This was a part of the money derived from the sale of five acres of the land for school purposes, which land was released from the deed of trust. This disposes of defendant Eva Forgey's counterclaim in that sum.

The only serious question of fact is whether or not the deed of trust, after the signing thereof by Eva and Minnette Forgey, was materially altered by William Forgey without their knowledge or consent. The trial court so found. The testimony of the three Forgeys, the only witnesses testifying to that point, tends to show that such alteration was so made. The finding of the trial judge appears to have been largely, if not entirely, based upon that testimony.

We are fully aware of the general rule that, in an equity case such as this is, deference should be given to the findings of fact made by the chancellor. But an appellate court is not bound by such findings and is fully authorized to, and indeed should, reach its own conclusions of fact on the record presented to it. [Cohron v. Polk, 252 Mo. l. c. 281, 158 S. W. 603; Linneman v. Henry (Mo. Sup.), 291 S. W. l. c. 113.] A careful consideration of all the facts and circumstances in evidence compels us to disagree with the learned chancellor as to the credit which should be accorded to the testimony of the deeply interested witnesses who testified on this vital issue of fact.

Neither plaintiff, the beneficiary, nor Davis, his trustee, had anything whatever to do with the alteration made in the deed of trust by William Forgey. The alteration, under the circumstances and made as it was with red ink, impresses us, in examining the instrument which we have before us, that the change made was open, not covert, honest, not dishonest. As changed the deed of trust accurately described the amount specified in the note actually signed and

the note necessary to be signed, in order to carry into effect the agreement between plaintiff and William Forgey, which agreement was well known to Eva and Minnette Forgey. The description of the note in the deed of trust as originally prepared did not accurately describe a note necessary to carry out the agreement, when the deed of trust was signed by Eva and Minnette Forgey, because of the two months' delay in its execution, while interest on the agreed indebtedness was accruing.

There are some very significant facts in the case which render unlikely the testimony of the Forgeys. All three of said defendants agree that the change of date from June 15th to August 16th, made in red ink, was made *before* Eva and Minnette Forgey signed the deed of trust. Yet the handwriting in each alteration, as our inspection of the original deed of trust discloses, has a remarkable continuity and uniformity in its execution. The red ink used in both places is not only of exactly the same color, but the shade of the ink appears to be identical in each alteration, just as if both alterations, so far as drying or blotting of the ink is concerned, had been treated exactly alike after being written.

It is a fact of common knowledge that the same person's handwriting at different times and on different occasions will and does vary noticeably. One of the well-accepted evidences of the verity of the entries in a running book account, kept in the same handwriting and using the same ink, is the slight difference in the appearance of the writing, due to the fact that the entries were made at different times when the execution of the writing is affected by the particular conditions influencing the hand and mind of the writer at the time. To our minds, the handwriting in red ink in writing the words "sixteenth" and "August" and the words "Fourteen Thousand ($14,000) Dollars" are so similar in size and form of the letters and the shade and density of the ink are so identical as to indicate that the two alterations were made at one and the same time, at a single sitting and as one continuous act by the writer thereof. The record does not support the finding of the trial court that the note was written by William Forgey after the deed of trust was signed by Eva and Minnette Forgey. He said he prepared the note and brought it home for his wife to sign when she and his mother signed the deed of trust.

But, if the appearance of the alterations and our deductions therefrom were all the considerations influencing our findings, we would not feel so much at liberty to disregard the oral testimony of the Forgeys that the alteration in the amount of the deed of trust was made at a time later than the signature of the note and the change

692

in the date of the deed of trust. In May, 1923, William Forgey and his wife conveyed all their right, title and interest in and to the land by quitclaim deed to Charles W. Shelton "subject to a deed of trust for $14,000." And in October, 1923, said Shelton and his wife conveyed that same interest to Eva Forgey "subject to a deed of trust for $14,000." There was no other deed of trust on the property at that time. Minnette Forgey executed one of the deeds containing the exception and Eva Forgey accepted one of the deeds with the same exception in it, and doubtless knew about the exception in the other. Her explanation that she thought the $13,800 description in the deed of trust was referred to by the language used in the Shelton deed, is far from satisfactory.

The positive testimony of William Forgey that he changed the deed of trust from a description of a $13,800 note to one of $14,000 after the deed of trust was signed by his wife and mother and without their knowledge or consent, is not convincing. Such action on his part appears quite unlikely in view of all the facts and circumstances. The note for $14,000 was in existence when the deed of trust was finally executed. When changes were being made in the date of the deed of trust, it was natural that all changes necessary should have been made at the same time. The change from $13,800 to $14,000 in the deed of trust was an honest one and was necessary to describe properly a note large enough to carry out the precise agreement made by plaintiff and William Forgey. This agreement was understood by all the parties. There was, therefore, no object to be accomplished by William Forgey in changing the amount in the deed of trust secretly and without the knowledge or consent of his wife or mother. His testimony that he did it in this manner raises a strong suspicion that his testimony is the result of his interest in the result of the suit and was based on an afterthought in order to further the interests of himself and mother by taking advantage of an honest alteration boldly appearing on the face of the instrument. Eva and Minnette Forgey could easily have been honestly mistaken as to when the alteration was made. The quitclaim deeds from William and Minnette Forgey to Shelton in May, 1923, and from Shelton and wife to Eva Forgey in October, 1923, shortly preceding the rendition of a judgment against William Forgey in favor of a bank at Louisiana for $1085 in December, 1923, followed by levy upon and sale of the interest of William and Minnette Forgey in the land and the purchase thereof at the sheriff's sale by Eva Forgey for $1167.57 suggests that William and Minnette Forgey were juggling their property to defeat their creditors and that Eva Forgey was assisting them in that questionable enterprise. We are author-

ized to take this into consideration in determining what weight and credit we will accord to the testimony of the Forgeys.

In view of all the facts and circumstances in the case above set out and considered, we are unable to accept the testimony of Eva and Minnette Forgey that the deed of trust was not altered to describe a note for $14,000, instead of one for $13,800, *before* they signed the deed of trust, or the testimony of William Forgey that he made such alteration *after* Eva and Minnette Forgey signed the deed of trust and that he made it without their knowledge or consent.

Because of the well-understood arrangement that the note and deed of trust were to be given to take up a previously existing interest-bearing debt of William Forgey and that such time had elapsed between the original preparation of the deed of trust and its execution that an increase in the note from $13,800 to approximately $14,000 was apparently necessary to carry out such arrangement, we find nothing suspicious in the alteration in the description of the amount of the note. Hence, the burden was clearly cast upon the Forgeys to prove that such alteration occurred after, rather than before the deed of trust was signed by Eva and Minnette Forgey. [2 C. J. 1288.] The fact of subsequent unauthorized alteration has not been satisfactorily established in this case.

Our conclusion as to the appeal of plaintiff Whetsel is that the deed of trust is valid and binding on Eva Forgey, as well as upon William Forgey and wife, and should likewise be reformed as to her interest in the real estate and that, as so reformed, said deed of trust should be ordered foreclosed as to the interest of all the Forgeys in the entire property described in the deed of trust.

This conclusion necessarily disposes of the appeal of Eva Forgey from the judgment of the trial court reforming the deed of trust and foreclosing same as reformed against the undivided one-half interest of William Forgey, which Eva Forgey acquired subsequent to the execution and delivery of the deed of trust. The appeal by William and Minnette Forgey is likewise without merit.

The trial court also properly found against William Forgey upon his counterclaim for $8300 damages because of alleged withholding from him and conversion by plaintiff of the shares of stock claimed by William Forgey as the result of the stock dividend declared by the Home Coal Company. A stock dividend is a dividend paid in stock instead of cash and is properly payable only out of surplus. The right to receive a stock dividend, like the right to be paid a cash dividend, is an incident of and dependent upon ownership of stock in the corporation. The general rule is that the pledgee of stock is entitled to cash dividends thereon for which he must account

to the pledgor. [14 C. J. 822, sec. 1243; 14 C. J. 732, sec. 1116; Merchants National Bank v. Richards,' 6 Mo. App. 454, l. c. 464; Gaty v. Holliday, 8 Mo. App. 118.]

The same rule is applicable to stock dividends. The value of outstanding stock is determined by the capital and surplus of the corporation. Issuance of a stock dividend lessens the value of such outstanding stock. To permit the pledgor to receive and appropriate a stock dividend on his stock, held by another as collateral to secure an indebtedness, is to permit the pledgor wrongfully to depreciate the security held by the pledgee. Hence, the pledgor cannot maintain an action for the failure or refusal of the corporation or its managing officers to declare and issue to him a stock dividend on his stock while it is thus pledged as security for his debt.

Before the time it is claimed any stock dividend was declared by the Home Coal Company, the stock of William Forgey had been pledged to plaintiff as collateral security for the notes given in payment for his stock and such pledge was only released that the same stock might be pledged again as collateral security for the $6,000 loan which William Forgey secured at the Peoples Bank of Bevier. William Forgey thereafter defaulted in the payments on his note and the bank exercised its option and sold his stock in January, 1924. William Forgey had no right to demand delivery to him of the stock dividend while his stock was thus pledged. Nor did he have any right to such stock dividend after his stock was sold under his pledge. There is no evidence that such stock dividend was actually issued to or received by plaintiff.

This action was commenced in October, 1924. William Forgey filed his separate answer in April, 1925. He, therefore, had the right to demand and receive the stock dividend neither at the time the suit was filed nor when he filed his separate answer. For this reason, regardless of any other reason urged, his appeal from the disallowance of his $8300 counterclaim is without merit.

William and Minnette Forgey complain of the action of the trial court, under the second count of the petition, in taxing against them the "cost expended in this cause under and by virtue of said sale under said deed of trust." No personal judgment against any of the defendants, except for costs of this suit, was prayed for in the petition. The costs of the foreclosure of the deed of trust and sale of the property described therein are primarily chargeable against the property and not against the makers of the note described in the deed of trust. The deed of trust itself provides that the first item to be paid out of the proceeds of the sale shall be the costs of such sale. If the property covered by the deed of trust does not bring enough at the foreclosure sale to pay

the costs of sale and to pay in full the principal and interest due on the note, the makers of the note may become liable over for the deficiency in some other proceeding. Such cost of sale was improperly taxed against William Forgey and Minnette Forgey in this case and the judgment should be modified in that respect. The judgment should also be modified so as to tax the costs of this case to Eva Forgey, as well as to William and Minnette Forgey.

It is accordingly ordered that the judgment on both counts in favor of defendant Eva Forgey be reversed and that the cause be remanded to the trial court with instructions to enter a new decree and judgment in the case granting plaintiff the relief prayed for in both counts of his petition against all of the defendants Forgey, together with judgment for costs of this case against all of the defendants Forgey. *White, J.,* concurs; *Walker, J.,* concurs in the result.