JESSIE McGHIE, ADMINISTRATRIX *d. b. n., c. t. a.* OF
ESTATE OF HENRY TURRISH, v. FIRST AND
AMERICAN NATIONAL BANK OF DULUTH.[1]

May 5, 1944.

No. 33,711.

[1]Reported in 14 N. W. (2d) 436.

*Larrabee & Larrabee* and *G. A. E. Finlayson,* for appellant.
*Crassweller & Crassweller,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying plaintiff's alternative motion for amended findings of fact and conclusions of law or a new trial. We review only the order denying a new trial. Plaintiff is administratrix *d. b. n., c. t. a.* of the estate of Henry Turrish. The action is to recover $2,159.50 offset by defendant bank from a savings account deposited in the bank by plaintiff's predecessor.

During his lifetime, Henry Turrish executed three notes to the bank under the dates and in the amounts as follows: September 21, 1931, for $35,000; November 20, 1931, for $20,000; January 4, 1932, for $10,000. The $35,000 note was secured by a pledge of 200 shares of stock in the Boise-Payette Lumber Company, hereinafter referred to as the lumber company; the other two notes were secured by pledges of other stock not material here. All three notes contained the following provision:

"with interest at the rate of six per cent per annum from date hereof until paid, and have deposited with said bank as security for the payment of this *or any other liability or liabilities of the undersigned to said bank,* due or to become due, *or that may hereafter be contracted,* the following described property owned by the undersigned." (Italics supplied.)

Turrish died in 1934 leaving the notes unpaid. In 1936, G. M. Dunning was appointed special administratrix, and ·between her appointment and July 8, 1937, received $1,700 in dividends from the pledged lumber company stock. It is this sum plus interest that is in controversy. On July 21, 1937, the bank foreclosed on all the stocks that were pledged as security for the three notes. The proceeds of the foreclosure sale were applied as follows: the $35,000 note was marked "paid in full" over the signature of a vice-president of the bank; the $10,000 note was similarly marked; and the balance of ·the proceeds, some $5,221.67, was applied on the $20,000 note. February 16, 1938, defendant acquired knowledge that the dividends here under consideration had been paid to Dunning. March 1, 1938, the bank filed its claim in the probate court for the unpaid balance on the $20,000 note. This and other claims were allowed, subject to the following condition:

"Upon condition that within ninety days from the date hereof the above named claimants [including the bank by name] surrender the securities held by them to the representative of the estate, or exhaust the same in the manner provided by law."

December 20, 1940, the bank stated that it had "foreclosed" on its securities and "held no securities or collateral of any kind for the payment of said note," and its claim was then unconditionally allowed.

When the special administratrix's final account was approved, she turned over the entire balance in her hands, some $4,006.64, to William A. Watts, the administrator. (The plaintiff here is his successor.) Watts then deposited this sum in a savings account in defendant bank, .subject to an agreement that he could not make withdrawals without the countersignature of a representative of the company which furnished his administrator's bond. On June 4, 1941, the bank offset $2,159.50 (the amount of the dividend payments plus interest) against the administrator's bank deposit without his permission, and this action followed.

It is the bank's position that it was entitled to the $1,700 in dividends on the pledged lumber company stock which was ·paid to

the special administratrix in 1936 and 1937. Plaintiff contends that the bank was not entitled to these dividends, and, even if it were, that it is estopped to assert its rights.

■ The general rule is that the pledgee of corporate stock is entitled to the dividends declared on the stock subsequent to the pledge to the extent of his interest, and the fact that the stock has not been transferred on the corporate stock books does not affect the pledgee's rights as against the pledgor. 11 Fletcher, Cyc. Corp. (Perm. ed.) § 5382; Whetsel v. Forgey, 323 Mo. 681, 20 S. W. (2d) 523, 67 A. L. R. 476, and annotation; Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 182 A. 376, 103 A. L. R. 844, and annotation; Mandel v. North Hudson Inv. Co. 114 N. J. Eq. 336, 168 A. 432. In New Hampshire it is held that the legal title to such dividends vests in the pledgee. Hunt v. Laconia & Lakeport St. Ry. 68 N. H. 561, 39 A. 437. But the majority rule seems to be that the pledgee has only a special property which entitles him to receive the dividends and account to the pledgor therefor either by their application to the debt or by holding any excess in trust for the pledgor. If the pledgor collects the dividends, he holds them as trustee for the pledgee, who may recover them from him to the extent of the debt as for money had and received. National Bank of Commerce v. Equitable Trust Co. (8 Cir.) 227 F. 526; Gaty v. Holliday, 8 Mo. App. 118. It has been held that the pledgor in such case is a trustee *de son tort* or *ex maleficio*. Detroit Trust Co. v. First Nat. Bank (D. C.) 7 F. Supp. 117, where many questions similar to those here before us were raised.

■ We do not regard the defendant's action in marking the $35,000 note "paid in full" as precluding it from asserting its rights under the provision that the stock was to be held as security for other indebtedness. The contract obligation evidenced by the note and pledge was fulfilled only so far as payment of the note was promised. That payment did not discharge or fulfill the part of the contract pledging the securities for other obligations to defendant.

■ Nor did defendant waive its right to the dividends by obtaining the allowance of its claim in full against the Turrish estate. The special administratrix had received funds which belonged to defendant. She intermingled these funds with those of the estate and passed them on to the administrator, who deposited them in defendant bank. The amount of the dividends plus interest was a debt of the administratrix and, after his receipt of the funds, of the administrator to defendant. Like any other matured debt, defendant bank had a right to offset it against its debt to the administrator. The dividends plus interest were no part of the estate. They were paid after Turrish's death to his special administratrix, who owed them to the defendant. Its obligation was to credit the amount so offset upon Turrish's unpaid note. The estate owed a balance after the offset. There was, however, no waiver of a known right nor was anyone prejudiced so as to produce an estoppel. Defendant could not, of course, collect twice for the same debt, but it could collect what it could from the administrator on the dividend debt and the remainder from the estate. Being a debt as distinguished from a pledged security, it did not fall within the terms of the requirement of the probate court that securities be surrendered as a condition to allowance of defendant's claim.

■ The record before us does not justify plaintiff's contention that defendant was not entitled to more than a proportionate share of all the dividends collected by the administrator. Whether the other dividends so collected were on pledged stock does not appear. If so, the extent to which they were from pledged stock does not appear.

Other contentions are obviously without merit.

Order affirmed.

Streissguth, Justice (dissenting).

In my opinion, defendant waived its right to the dividends on the corporate stock pledged to it by obtaining the allowance in probate court of its claim as an unsecured creditor of the Turrish estate. The note forming the basis of the claim is the $20,000 note dated November 20, 1931, referred to in the opinion of the Chief

Justice. The bank's claim was allowed, by order of the probate court dated January 23, 1940, *"upon condition* that within ninety days from the date hereof the above named claimants [including the defendant specifically by name] surrender the securities held by them to the representative of the estate, or exhaust the same in the manner provided by law." This order was entered *subsequent* to the time defendant acquired full knowledge that the dividends here under consideration had been paid to the special administratrix of the estate. With such knowledge, the bank on December 20, 1940, in order to prove compliance with the conditions of the order of January 23, 1940, and to procure the allowance of its claim against the estate, filed its sworn petition in the probate court stating that it held no securities or collateral of any kind for the payment of said note. On the basis of this petition, the probate court allowed the claim absolutely and entered judgment thereon for the full amount thereof. The bank, having thus elected to comply with the order of January 23, 1940, imposing conditions upon the allowance of its claim as a general creditor, must be held to have waived any right that it had as pledgee to the dividends here in dispute.

Waiver is "the intentional relinquishment of a known right." Farnum v. Peterson-Biddick Co. 182 Minn. 338, 341, 234 N. W. 646, 648; Coppoletti v. Citizens Ins. Co. 123 Minn. 325, 143 N. W. 787; Hendrickson v. Grand Lodge, 120 Minn. 36, 138 N. W. 946; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A. (N.S.) 231, 7 Ann. Cas. 1144; 6 Dunnell, Dig. & Supp. § 10134; 67 C. J., Waiver, § 1. It may be created by acts, conduct, or declarations insufficient to create a technical estoppel. Mee v. Bankers' L. Assn. 69 Minn. 210, 72 N. W. 74; Bowman v. Surety Fund L. Ins. Co. 149 Minn. 118, 182 N. W. 991; Parsons, Rich & Co. v. Lane, *supra.* It may be by consent expressly or impliedly given. Coppoletti v. Citizens Ins. Co. *supra.*

The question of waiver is mainly one of intention, which lies at the foundation of the doctrine. Farnum v. Peterson-Biddick Co. *supra.* The intent may be inferred from facts and circumstances, as well as found in the written statements or oral declarations of

the party. Parsons, Rich & Co. v. Lane, *supra*. "Waiver * * * becomes a question of law when the facts and circumstances relating to the subject are admitted or clearly established." Minneapolis E. L. Co. v. Federal Holding Co. 175 Minn. 421, 425, 221 N. W. 645, 646. And where conduct indicating a waiver is so "inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary," the intent to waive appears as a matter of law. Farnum v. Peterson-Biddick Co. 182 Minn. 341, 234 N. W. 647, and Minneapolis E. L. Co. v. Federal Holding Co. *supra*.

Here, in my opinion, both knowledge and intent have been conclusively established. The bank, for a period of almost three years, had knowledge of the payment of the dividends to the special administratrix and took no action to assert and protect its claim thereto. It had such knowledge at the time it elected to proceed as a general creditor against the estate. It deliberately filed its claim in probate court, knowing what condition the court had imposed thereon. It must therefore be deemed to have voluntarily surrendered and waived any claim to the dividends which had been appropriated by the administratrix of the Turrish estate several years before.

THOMAS GALLAGHER, JUSTICE (dissenting).

I concur in the dissent.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.