## BUSCH v. COMMISSIONER OF INTERNAL REVENUE.

No. 12992.

Circuit Court of Appeals, Eighth Circuit.

April 23, 1945.

Frank H. Fisse, of St. Louis, Mo. (Danniel N. Kirby and Harry W. Kroeger, both of St. Louis, Mo., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Melva M. Graney, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Petitioner seeks a review of a decision of the Tax Court which redetermined deficiencies of $4,095.55 and $7,855.56 in his income taxes for 1939 and 1940, respectively.

Petitioner was the beneficiary of a trust created in 1937 by his mother, under which the trustees were required to pay to him during his life "so much of the net annual income of the trust estate for each calendar year as he shall, in writing signed by him and delivered to the Trustees, have requested". Any income not so requested by him was to be added to the principal of the estate, but the trustees were authorized at any time to make payments out of principal to him, as he might request and as they should deem expedient. He was given a power of testamentary appointment over any remainder in the trust at his death.

In 1939, the mother decided to add some further property to the trust—as well as to the similar trusts which she had created for her other children—consisting of shares in the "Trust for Equitable Interests in Anheuser-Busch, Incorporated,

Shares". These shares of equitable interests will be referred to here, for convenience, though somewhat inaccurately, as shares of stock.

The gift tax upon the transfer of the shares of stock to the several trusts amounted to $600,000. The mother desired to make the trusts bear the burden of the gift tax, and so she borrowed the amount at a bank, executed notes therefor, pledged the stock as security, and had the bank agree that there should be no personal liability on the notes but that it would look only to the collateral for payment. The transfer of the stock to the trusts was made subject to "all the rights and remedies available to the holder [pledgee-bank] at any time of said lien". The indebtedness was divided into as many notes as there were trusts, a separate note being executed for the proportion of the loan that the amount of stock given to an individual trust bore to the total number of shares transferred. The stock transferred to a particular trust was made collateral only to this separate note. The note which the stock transferred to the trust for petitioner secured was in the sum of $31,395.-52.

The bank received and held the stock under an assignment in blank, but the pledge agreement contained a provision that it was "authorized at its option to transfer into its own name or that of its nominee any and all securities which may at any time be pledged hereunder, and this shall be full authority to the corporation or other persons issuing such securities to make such transfer." There was, however, a further provision in the pledge agreement that "All dividends and distributions of cash, or of other property, made upon said trust shares or any substituted collateral, while above note is unpaid, shall belong to the then owners of the equitable title to said collateral".

As part also of the transaction between the bank and his mother, petitioner executed a written order or direction to the trustees, which recited that, in order to enable the trustees to accumulate a fund to remove the lien from the pledged stock, petitioner was willing "to forego all participation in the cash income [from the stock], if any, that you may receive prior to January 1, 1940, and to forego a part of such income to be received by you after December 31, 1939," and he "hereby requests, and agrees with you, that you do

not pay to him any of such trust income to be received by you prior to January 1, 1940, and that while said note and interest thereon remains unpaid, you may and shall pay over and distribute to him twenty per cent (20%) of the cash income distributable to him by you and derived by you after December 31, 1939, from said trust shares".

The trustees collected the dividends on the stock and paid over to the bank, in accordance with the intention of petitioner's order, the full amount received by them as income on the stock in 1939 and 80 per cent of the amount received in 1940. The remaining 20 per cent of the 1940 dividends they paid to petitioner. The Commissioner ruled that the amount thus paid by the trustees to the bank during each of the tax years involved was required to be included in petitioner's gross income for the respective years. The Tax Court upheld the Commissioner's deficiency determination against petitioner, based upon this income.

■ Petitioner contends here that the part of the dividends which the trustees paid to the bank was never legally his and at no time had been subject to his command, and that it therefore could not properly constitute income to him. He relies on the rule that "the pledgee of stock is entitled to all dividends which accrue on the stock which he holds during the pendency of the pledge, and this is true although the pledgee has failed to procure registration on the books of the corporation." That this is the law of Missouri, as well as generally, in the absence of a contrary agreement or subsequent waiver cannot be disputed. 12 Fletcher Cyclopedia Corporations, Perm. Ed., § 5657, p. 892; Merchants' National Bank v. Richards, 6 Mo.App. 454, 464; Gaty v. Holliday, 8 Mo.App. 118, 119, 120; Whetsel v. Forgey, 323 Mo. 681, 693, 20 S.W.2d 523, 528, 67 A.L.R. 476. But it has no application where, as here, the pledge agreement specifically provides that the dividends shall continue to belong to the pledgor or his successor in interest. See Restatement, Security, § 3; 41 Am. Jur., Pledge and Collateral Security, § 34. "In such a case", as the Tax Court properly observed in its opinion, 3 T. C. 547, "while the pledgee, by causing the shares to be transferred, might possibly place itself in position to receive the dividends, as between itself and the issuing corporation, it would obviously not be entitled to retain them or apply them on the debt, but would be required, by its own agreement, to pay them over to the pledgor."

■ Petitioner seeks to escape the effect of the provision in the pledge agreement that "All dividends * * * while above note is unpaid, shall belong to the then owners of * * * said collateral", by asserting that "The clause denoted merely that the dividends were to inure to the benefit of the trust estate and its beneficiaries, as distinguished from the original pledgor, who at the time of the pledge intended to transfer the equity." But the Tax Court was not required to adopt this artificial construction. The language of the provision appears plainly to suggest that its purpose was, not to confirm generally the right of the trust to receive dividends henceforward as against the mother, but to establish specifically the right of the trust to receive such dividends during the period of the pledge as against the pledgee—for the words used are "while above note is unpaid". Furthermore, the mother's right to receive future dividends upon the stock would as effectively have passed out of her hands by the unconditional transfer of her ownership as the right of her transferee to receive dividends during the period of the pledge would have done, if there had been no contrary provision in the pledge agreement. 12 Fletcher Cyclopedia Corporations, Perm. Ed., § 5499.

We must accordingly hold that the Tax Court's declaration was not without a rational basis, that, under the terms of the pledge agreement, the dividends on the stock legally belonged to the trust and not to the pledgee; that they thus constituted income which the trust indenture made subject to petitioner's plenary command— a fact which the pledgee and petitioner also recognized in having him execute in connection with the loan transaction an authorization to the trustees to make payment to the pledgee of the part of the dividends here involved; and that, by virtue of petitioner's legal right of command over such part of the dividends as trust income (as well as his actual exercise of that command in the present situation to secure removal of the pledge lien from the trust property) he could be required for revenue purposes to treat the payments made to the bank from the dividends as part of his taxable income.

801

We have held in the recent case of Mallinckrodt v. Commissioner, 8 Cir., 146 F. 2d 1, 5, certiorari denied Mallinckrodt v. Nunan, 65 S.Ct. 1017, that a trust beneficiary who has the unqualified and unrelinquished power to command the payment to himself of the annual income of the trust may be taxable upon such income, whether in a particular year he chooses to exercise the power or not. Here, as a matter of fact, petitioner actually exercised his power of command, by directing the trustees in effect to make payment to himself of part of the dividend income during the lien period and to pay the balance to the pledgee, and by so doing to wipe out the lien on the assets and improve the economic position of the trust—of which he was the immediate income-beneficiary, and from which he might receive distributions of principal, on request, if the trustees deemed it expedient, and over the remainder of which he had the power of testamentary appointment.

Petitioner has argued that the Tax Court should have treated the situation as amounting to a legal disclaimer by him of any beneficial interest in the part of the dividends which was to be paid to the pledgee. Under what conditions there may be such an effective disclaimer of the beneficial interest in a trust as will enable the beneficiary to escape tax liability upon the income, we need not here consider. It is sufficient in the present situation to say that, on the facts which we have set out above, the Tax Court was not required to hold that any such disclaimer existed. It is not contended, of course, that there was a disclaimer of the general right to receive income from the stock. Petitioner, on the contrary, had specifically commanded that he be paid a part of such income during the lien period. The balance he simply authorized, and hence in effect commanded, to be paid to the pledgee—not disclaimed the existence of any right or interest in what could or might be done with it. From a practical standpoint, the payments to the pledgee were intended to serve the purpose of removing the lien and improving the economic position of the trust. In this petitioner had a direct interest, for, to repeat, he was the immediate income-beneficiary of the trust, he might on request receive distributions of principal, if the trustees deemed it expedient, and he had a power of testamentary appointment over the remainder. But, in any event, the bank

had no legal hold upon the dividends except for the authorization which petitioner executed; the authorization was intended to require the trustees to make such payments to the bank; and the trustees had a legal obligation to petitioner to see that the payments were made. These are hardly the elements of a tax-immunizing disclaimer.

Affirmed.