NO. 07-08-0057-CV

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 

JANUARY 27, 2010

 

______________________________

                                    

IN THE MATTER OF THE
MARRIAGE OF

WILLIAM
HERBERT WATSON AND NINA JOYCE WATSON

                        _________________________________

 

FROM THE 99TH
DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2006-533,951;
HONORABLE WILLIAM SOWDER, JUDGE

_______________________________

 

Before QUINN, C.J., and CAMPBELL and PIRTLE,
JJ.

 

MEMORANDUM OPINION

            In
this appeal of a property dispute arising in a suit for divorce, appellant Nina
Watson contends the trial court mischaracterized as the separate property of
her husband, appellee William Herbert Watson, Jr. (Billy), shares of stock he
received during marriage from his father and funds he received under an
“earnout agreement” on the sale of the family business.  Finding the trial court did not abuse its
discretion in its characterization of the property in question, we will affirm.

 

 

Background

            Billy’s
father, William Herbert Watson, Sr. (W.H.) founded Watson Institutional Foods,
Inc. (“Watson Foods”) in 1955 and was CEO. 
Mike Davis and later Billy worked for Watson Foods while attending
college and after graduation became full-time employees. Each rose in
responsibility.  Davis ultimately became
president and chief operating officer. 
Billy became executive vice president of sales and marketing.  

            In
1985, W.H. began to transfer shares of stock in the corporation to Billy and
Davis.  From 1985 through 1999, W.H.
annually transferred equal amounts of his Class A, or voting, shares of the
corporation to Billy and Davis.  Through
these transfers, each eventually obtained 12.25 percent Class A share
ownership.[1]  According to W.H.’s trial testimony, the
stock transfers to Davis and the Watson children were gifts made according to
an estate plan. 

            During
the tenure of Billy and Davis, Watson Foods grew significantly.  Davis testified it more than doubled.  Billy and Davis handled the day-to-day operations
but W.H. retained controlling share ownership and an active presence in the
business.  By the 1990s, other entities
expressed interest in purchasing the corporation.  In early 2000, a deal was struck whereby
Watson Foods merged with Sysco Food Services of Texas, Inc. (Sysco Texas) a
wholly-owned subsidiary of Sysco Corporation. 
Sysco Texas was the surviving corporation of the merger.

            According
to Davis, the consideration Sysco paid for the merger was allocated among an
exchange of stock, replacement of the corporation’s employee stock ownership
plan with a Sysco 401(k) plan, a noncompetition agreement paying cash to Billy,
Davis, and W.H., and an earnout agreement. 
Entitlement to payment under the earnout agreement required that Sysco
Texas achieve agreed “performance goals” over the three years following the
merger. 

            Billy
and Nina married in June 1995 and in February 2006 Billy filed for
divorce.  Nina counterclaimed seeking a
disproportionate division of the community estate.  The major issues for trial were property
characterization and division.  Following
a bench trial, the court granted the divorce and divided the marital
estate.  On the request of Nina, it made
findings of fact and conclusions of law. 
Among other things, it classified as Billy’s separate property the Sysco
stock derived from the Watson Foods shares he received from W.H., before and
during marriage, and the principal balance of funds paid Billy under the
earnout agreement with Sysco. 

Analysis 

            Through
her first two issues Nina contends the trial court mischaracterized as Billy’s
separate property the Watson Foods stock he acquired from his father and the
proceeds paid under the earnout agreement. 

            To
determine whether the trial court erred in characterizing property, we apply an
abuse of discretion standard.  See
Boyd v. Boyd, 131 S.W.3d
605, 617 (Tex.App.–Fort Worth 2004, no pet.). 
A trial court abuses its discretion when it acts without reference to
any guiding rules or principles or, said differently, the act under review was
arbitrary and unreasonable.  Downer v.
Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985).  Under
the abuse of discretion standard, applied in a family law case, legal and
factual sufficiency of the evidence are not independent grounds of error, but
are relevant factors for determining whether the trial court abused its
discretion.  Boyd, 131 S.W.3d at 611; Moroch
v. Collins, 174 S.W.3d 849,
857 (Tex.App.–Dallas 2005, pet. denied). 
See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991) (turnover order).  Only if the trial court’s mischaracterization
is of such proportion that it affects the just and right division of the
community estate must we remand the entire case for a just and right division
based on the correct characterization of the property.  Boyd, 131 S.W.3d at 618.

            Community
property is property, other than separate property, acquired by either spouse
during marriage.  See Tex. Fam.
Code Ann. § 3.002 (Vernon 2006). 
Separate property is property owned by a spouse before marriage,
acquired during marriage by gift, devise, or descent, or acquired as a recovery
for personal injuries sustained during the marriage.  See Tex. Fam. Code Ann. § 3.001 (Vernon 2006).  Property possessed by either spouse during or
on dissolution of marriage is presumed community property.  Tex. Fam. Code Ann. § 3.003(a) (Vernon 2006);
Roach v. Roach, 672
S.W.2d 524, 529 (Tex.App.–Amarillo 1984, no writ).  To overcome the presumption of community
property, the contesting spouse must prove by clear and convincing evidence
that the property is separate.  Tex. Fam.
Code Ann. § 3.003(b) (Vernon 2006). 
“Clear and convincing evidence” is that measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.  In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).

            A
gift is a voluntary transfer of property to another made gratuitously and
without consideration.  Hilley v.
Hilley, 161 Tex. 569, 342
S.W.2d 565, 569 (1961).  The elements of
a gift are: (1) the intent to make a gift; (2) delivery of the property; and
(3) acceptance of the property.  Panhandle
Baptist Found., Inc. v. Clodfelter,
54 S.W.3d 66, 72 (Tex.App.–Amarillo 2001, no pet.). 

            In
reviewing the legal sufficiency of the evidence under a clear and convincing
standard, we look at all the evidence, in the light most favorable to the
judgment, to determine if the trier of fact could reasonably have formed a firm
belief or conviction that its finding was true. 
In re J.F.C., 96
S.W.3d at 265-66.  We presume that the
trier of fact resolved disputed facts in favor of its findings if a reasonable
trier of fact could do so.  Id.  We
disregard any contrary evidence if a reasonable trier of fact could do so, but
we do not disregard undisputed facts.  In
the Interest of J.L., 163
S.W.3d 79, 85 (Tex. 2005).

            In
conducting a factual sufficiency review under the clear and convincing
standard, we must consider all the evidence the fact finder could reasonably
have found to be clear and convincing, determining whether, on the entire
record, the fact finder could reasonably have formed a firm belief or
conviction of the truth of the allegations. 
See In re J.F.C., 96
S.W.3d at 266; In the Interest of C.H., 89 S.W.3d 17, 25, 27-29 (Tex. 2002).  In so doing, we consider whether disputed
evidence is such that a reasonable fact finder could have resolved it in favor
of its finding.  If, in light of the
entire record, disputed evidence that a reasonable fact finder could not have
resolved in favor of the finding is so significant as to prevent a fact finder
reasonably from forming a firm belief or conviction of the truth of the
finding, then the evidence is factually insufficient.  See In re J.F.C., 96 S.W.3d at 266; In re S.M.L.D., 150 S.W.3d 754, 757 (Tex.App.–Amarillo 2004, no pet.).

The Stock

            We
turn first to the characterization of the Watson Foods stock that Billy
received from W.H.  The evidence included
transfer documents which, according to testimony, reflected the 1995 through
1999 transfers of Watson Foods stock from W.H. to Billy, during Billy’s marriage
to Nina and prior to the merger.  Except
for their dates and the details of the shares transferred, the transfer
documents are identical in form.  The
document is entitled, “Act of Donation Inter Vivos.”  A sub-heading follows, stating, “Act of Donation
Inter Vivos By William H. Watson To William H. Watson, Jr.”  In part, material to our discussion, the
document continues:

WILLIAM H. WATSON, of full legal age and resident of
LUBBOCK, State of TEXAS who declared under oath to me, Notary, that in consideration
of the relationship and services provided, do by these presents grant, bargain,
donate, convey, transfer, assign, set over, abandon and deliver, . . . unto the
said WILLIAM H. WATSON, JR., of full legal age and resident of LUBBOCK, State
of TEXAS, here present and accepts such donation with gratitude as his/her
separate property and estate for himself, his heirs and assigns, and
acknowledging due delivery and possession thereof, all and singular the
following property to-wit:

 

An entire interest in the following described property:

 

[here appears the number, class, and value of shares
transferred] as of the date of this gift, as determined by an independent
appraiser. 

***

TO HAVE AND TO HOLD the above-described property unto the
said donee . . . forever.

 

THUS DONE AND PASSED, in my presence, WILLIAM H. WATSON,
Donor and WILLIAM H. WATSON, JR., Donee [date], in the presence of . . .,
competent witnesses, who hereunder sign their names with the said appearers and
me, Notary, after reading of the whole.

 

Each transfer document is signed by
W.H., Billy, two witnesses and the notary public.

            Simply
said, Nina contends the transfer document’s inclusion of the phrase “in
consideration of the relationship and services provided” provides conclusive
evidence the shares were transferred in consideration of Billy’s services
during the marriage, requiring their characterization as community
property.  Billy counters that the
language of the transfer document evidences a gratuitous transfer rendering the
shares his separate property.  Neither
party claims ambiguity in the transfer document.  Thus, its construction is a matter of law
that we review de novo.  See
Borders v. KRLB, Inc., 727
S.W.2d 357, 359 (Tex.App.–Amarillo 1987, writ ref’d n.r.e.).  As such, we need not defer to any
interpretation afforded the document by the trial court.  Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26
(Tex.App.–Amarillo 2000, no pet.).  We
strive to give effect to the intent of the parties as taken from the language
of the instrument, and we consider the language in its entirety.  Id. 
Specifically, we peruse the entire document to understand, harmonize,
and effectuate all of its provisions.  Id.; State Farm Life Ins. Co. v.
Beaston, 907 S.W.2d 430,
433 (Tex. 1995) (contract is read as a whole, rather than by isolating a
certain phrase, sentence, or section). 

            We
cannot agree the phrase “in consideration of the relationship and services
provided,” in the transfer document has the effect Nina posits.  Excepting only the two words “services
provided,” the transfer document in all respects speaks of a gift
transfer.  Its title and sub-heading
refer to a donation; its parties are referred to as donor and donee; by its
acceptance language the donee “accepts such donation with gratitude as his/her
separate property and estate.”  The four
corners of the instrument give no hint of the nature of the “services
provided.”[2]  Nina’s argument assumes the phrase can mean
only a valuable consideration, and her assumption likely would be accurate in
most instances.  But, like the
“relationship” recited as constituting part of the consideration for these
share transfers, consideration recited in a document of transfer may refer to a
non-valuable consideration that is not inconsistent with a gift.  See, e.g., Babb v. McGee, 507 S.W.2d 821, 823
(Tex.Civ.App.–Dallas 1974, writ ref’d n.r.e.) (recitation in deed of $10.00 and
love and affections held to constitute a gift); cf. Glenney v. Crain, 352 S.W.2d 773, 775
(Tex.Civ.App.–Houston 1961, writ ref’d n.r.e.) (love and affection is not a
consideration deemed valuable in law). 
Attempting to reconcile and harmonize all of the language employed in
the transfer document, we seek guidance in a phrase recently employed by the
Texas Supreme Court, noscitur a sociis (“a word is known by the company
it keeps”). United States Fid. & Guar. Co. v. Goudeau, 272 S.W.3d 603, 606 (Tex. 2008)
(construing insurance policy).  By this
canon of construction, the meaning of a particular word or phrase is
ascertained by reference to those words or phrases with which it is associated.  See Green Ave. Apartments Inc., v.
Chambers, 239 S.W.2d 675,
684-85 (Tex.Civ.App.–Beaumont 1951, no writ) (quoting Williston on
Contracts (rev’d ed.)).  Here, in the
context of these documents reflecting transfers from father to son, the
“services provided” phrase is associated with the “relationship” between the
donor and donee.  Accordingly, we find
the phrase “in consideration of the relationship and services provided” here
refers not to some unspecified but valuable consideration but to those arising
from the familial relationship.  See Stewart v. Damron, 63 Ariz. 158,
167, 160 P.2d 321, 325 (1945) (equating love and affection consideration for
gift with “services such as association, care, mutual assistance,
companionship, understanding, and support”). 
The phrase does not conclusively demonstrate that W.H. transferred the
Watson Foods shares to his son Billy for a valuable consideration inconsistent
with a gift. 

            Nina
next argues that the trial court abused its discretion in characterizing the
stock as the separate property of Billy because the finding is not supported by
factually sufficient evidence.  

            The
essence of Nina’s factual insufficiency claim is Billy was undercompensated and
received the Watson Foods stock from his father as additional consideration for
his services as an officer of Watson Foods. 
To support this argument, Nina relies on the “services provided”
language of the transfer document.  She
also points to facts surrounding the relationship among Billy, his father,
Davis, and Watson Foods.  Davis is not
related to W.H. or Billy.  Yet W.H.
transferred an identical number of Class A shares to Billy and Davis each year
they served as officers for Watson Foods. 
Davis’s testimony indicated the corporation’s performance each year had
an impact on the determination of the number of shares W.H. transferred to him
and Billy the following year.  W.H.,
Billy, and Davis were the only holders of Class A shares at the time of the
merger.  At that time, the Class A stock
in Watson Foods was valued at $9,000,000. 
Watson Foods stock was annually appraised for the corporation’s employee
stock ownership plan.  On four occasions
during 1995 through 1997, the value of shares transferred to Billy was
discounted from the appraised value.[3] 

            To
support the theory of undercompensation, Nina presented at trial a CPA with
certification as a valuation analyst.  In
his opinion, Watson Foods undercompensated Billy a total of $271,000 for 1996
through 1999.  This conclusion drew his
attention to the transfer documents where he noted the phrase “services
provided.”  He then formed an
“impression” of a compensatory element in the transfer documents.  In his opinion, “perhaps the after-marriage
transfers would constitute services and assets, compensation.” As a basis for
his opinion concerning the appropriate level of compensation for Billy from
Watson Foods, the CPA relied on data he obtained from a website, “salary.com.”
When asked if this website was generally accepted in the profession, he
responded that he knew of its use by a number of certified valuation analysts. 

            The
CPA was subject to a lengthy cross-examination. 
He explained that he did not consider other salary-reporting websites in
making his undercompensation determination. 
The information obtained from salary.com was particular to a vice
president of sales position but was not specifically tailored to Billy.  The CPA was not familiar with Billy’s job
description.  But he believed the job
description for a vice president of sales obtained from salary.com was
appropriate “based on what little [he] knew” about Billy’s work.  In making his evaluation, the CPA did not
inquire of Watson Foods or Sysco Texas of Billy’s job responsibilities.  He could not say if salary.com included
information about the food service industry in west Texas and agreed the
information on which he relied was from unknown industries.  The CPA was not aware of positions in Lubbock
comparable to Billy’s nor did he know how Billy’s salary was calculated.  In his opinion, establishing a rate of
compensation is an internal matter subject to outside influences such as
competition.  He believed profitability
of the company could also impact salary. 
Except for his belief that Billy was undercompensated, the CPA agreed
that gifting of stock by W.H., with corresponding reporting on gift tax
returns, was a “typical” approach in estate planning.  

            The
evidence showed W.H. began transferring Watson Foods stock to Billy and Davis
in 1985.  W.H. testified that he
initiated the program of stock transfers on advice of tax professionals for the
purpose of estate planning.  He received
nothing of monetary value from Billy in return for the stock and added that it
was not expected.  He believed the
transfer documents were prepared by his accountant.  Gift tax returns filed by W.H. were admitted
at trial.  These reported gifts of Watson
Foods stock to Billy and Davis as well as gifts of units in another entity,
Watson Development, Ltd., to W.H.’s other two children.  The record contains no evidence that Billy
rendered toil or labor for his father in consideration for valuable
compensation.  On cross-examination, W.H.
agreed that he set the salaries of Billy and Davis for Watson Foods. 

            Davis
testified that during the 1980s, W.H. appointed him president of Watson Foods
and Billy vice president.  W.H. also
began gifting Watson Foods stock to Davis and Billy.  According to Davis, no consideration for the
stock passed from Davis and Billy to W.H. 
At the time of the merger, Billy and Davis each possessed approximately
12.25 percent of Watson Foods Class A stock. 
On cross-examination, Davis agreed that his money and that of Billy was
“tied up” in the corporation.  

            Nina
testified that before marriage Billy told her nothing about his shares of
Watson Foods.  And during marriage he
stated that his pay was not adequate. 
Billy testified that in a premarital conversation he told Nina of the
Watson Foods stock and its status as a gift from his father.  

            As
trier of fact the court was the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony.  City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex.
2005).  Giving due consideration to the
evidence that the trial court could reasonably have found to be clear and
convincing, we find the evidence was both legally and factually sufficient to
support the trial court’s finding that the stock was the separate property of
Billy.  Accordingly, we overrule Nina’s
first issue.

The Earnout

            In
her second issue, Nina argues the trial court abused its discretion by
classifying proceeds received by Billy from Sysco Texas under the earnout
agreement as Billy’s separate property. 
Nina advances her argument through three grounds.  Her first contention depends, however, on the
presupposition that the trial court abused its discretion by characterizing the
Watson Foods stock as Billy’s separate property.  Because we have found the trial court did not
mischaracterize the stock, and did not, accordingly, abuse its discretion, we
focus on Nina’s remaining two grounds. 
These issue from the contention that the earnout proceeds were dependent
on the profitability of Sysco Texas, a company in which Billy was an executive
officer responsible for sales.  Nina
contends the earnout proceeds were income to the community because they were
either compensation for Billy’s labor or income from his separate
property.  

            The parties do not present disputed
material issues of fact pertaining to characterization of the earnout
proceeds.  Rather, our task again
involves examination of documents neither party claims are ambiguous.  In the sale of a business employing an
earnout agreement as part of the purchase consideration, the buyer pays an
agreed “up-front” portion of the purchase price with the final amount
determined by the future profits of the business.  Ordinarily the seller participates in
management of the business for a time following closure of the sale.  In re A.P.F. Co., 270 B.R. 567, 572 n.8 (Bankr. D. Del. 2001). 

            The
merger agreement provides the shareholders of Watson Foods would receive, as
consideration for their shares, $9,060,066 plus “Earnout Cash.”  In this respect, the agreement further
provides the Watson shareholders “shall have the right to earn up to $4 million
in cash (‘Earnout Cash’) over a three-year period based upon achievement of
operating results of Surviving Corporation [Sysco Texas] during such three-year
period.”  The particular conditions for
obtaining the earnout cash are specified by a contemporaneously executed
“Earnout Agreement.”  The parties to the
earnout agreement are Sysco, Sysco Texas, W.H., Billy, and Davis.  It identifies the three individuals as “Earnout
Shareholders.”  The earnout shareholders
are paid according to their percentage of Class A share ownership in Watson
Foods.  Under the agreement Billy was
paid $500,000 of which $353,907.03 remained in an account at the time of the
divorce proceeding.  We find these
contractual provisions consistent with an agreement conditioning the final
payment of consideration for the sale of a business on the future performance
of the business.  Such language is not,
on the other hand, consistent with an employee bonus arrangement.

            The
targeted pre-tax earning goals for Sysco Texas were a flat, unchanging
percentage for each of the three years. 
This is consistent with an agreement making payment of the final
purchase price of a business contingent on maintaining agreed, targeted
earnings following the sale.  See
A.P.F., 270 B.R. at 572.  Conversely, it is not consistent with an
incentive earning agreement that rewards employees for achieving an agreed
performance level or profit amount.  Id. 


            The
merger agreement provides a conditional offer of employment to Watson Foods
employees on “substantially the same terms and conditions” as afforded by
Watson Foods.  Notably, the merger
agreement and earnout agreement do not treat earnout cash as additional
compensation for W.H., Billy, and Davis. 
See A.P.F., 270
B.R. at 573.  Indeed, the agreements do
not require continued employment of the shareholders as a condition to the
payment of the earnout agreement.

            The
parties do not point us to, nor do we find, any record fact or legal authority
leading to a conclusion other than the earnout cash was the final payment of
consideration for the surrender by W.H., Billy, and Davis of their shares of
stock in Watson Foods.  We accordingly
find the trial court did not abuse its discretion by characterizing the earnout
cash received by Billy as his separate property.  Nina’s second issue is overruled. 

            By
her final issue, Nina seeks remand for a just and right division of the
community estate, based on findings by this court that the trial court abused
its discretion in characterizing the Watson Foods stock and earnout cash as
Billy’s separate property.  Because we
have found no error by the trial court, discussion of Nina’s third issue is
unnecessary to our disposition of the appeal. 
Tex. R. App. P. 47.1. 

Conclusion

            Having
overruled Nina’s issues necessary to the disposition of the appeal, we affirm
the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

            

 

 











 

[1] W.H.’s other two children, who were not
employees of Watson Foods, received Class C shares.





 

[2]
Nor does the record contain evidence Billy rendered services for his father in
exchange for the shares.





 

[3]
Correspondence contained in the record from Billy’s accountant mentions, in
general terms, discounting based on a lack of marketability and minority
shareholder status.